Submitted November 25, 2008, affirmed August 19, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WILLIAM MICHAEL BLANSCET, JR.,
*Defendant-Appellant.*

Josephine County Circuit Court
04CR0913; A134747

215 P3d 924

Peter Gartlan, Chief Defender, and Meredith Allen, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for two counts of first-degree rape, ORS 163.375; four counts of first-degree sodomy, ORS 163.405; and one count each of second-degree assault, ORS 163.175, and first-degree kidnapping, ORS 163.235. He advances four assignments of error, the first three of which pertain to the trial court's imposition of consecutive sentences on several of the convictions on the basis of its own factfinding, contrary to the holding in *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007). Those arguments are foreclosed by the United States Supreme Court's recent decision in *Oregon v. Ice*, 555 US ____ , 129 S Ct 711, 172 L Ed 2d 517 (2009), and we reject them without discussion. Defendant's remaining assignment relates to what he contends was the trial court's erroneous admission of evidence of defendant's prior acts of violence against the victim. We affirm.

Unless noted otherwise, the relevant facts are undisputed. Defendant and the victim met in the fall of 1999. About a month after they met, he assaulted her, and she had to be hospitalized. Defendant and the victim married in 2000. She became pregnant, and defendant assaulted her again, resulting in a miscarriage. The victim became pregnant again and delivered a child, but defendant had to be removed from the hospital because of his poor conduct. Defendant and the victim separated after that incident.

In 2002, defendant broke into the home where the victim was staying. She attempted to call 9-1-1, but defendant prevented her from completing the call. He was convicted of burglary, menacing, and interfering with a 9-1-1 call for that incident and sentenced to probation on condition that he have no contact with the victim. Defendant nevertheless contacted her and again acted violently toward her. She reported his conduct to the police, his probation was revoked, and he served 19 months in prison. While in prison, defendant wrote letters to the victim. At first, the tone of his letters was threatening, but later it was apologetic. He pledged that he had reformed and expressed his desire to be part of their child's life.

Defendant was released from prison in April 2004. A condition of his post-prison supervision was that he have no contact with the victim. Over the course of the next few months, he violated that condition several times. In October 2004, defendant pounded on the victim's door late at night, and she called the police. For the violation of the no-contact condition of his post-prison supervision, defendant served 45 days in jail.

Defendant was released on December 8, 2004. Late the next night, he went to the victim's apartment and pushed his way inside. Over the course of the next several days, defendant brutally assaulted the victim. Throughout the ordeal, defendant repeatedly referred to the fact that she had previously "snitched" on him. At one point, the victim attempted to call 9-1-1, but defendant thwarted the attempt, stating that she would get him thrown back in jail. On the basis of those events, defendant was charged with multiple counts of rape and sodomy, as well as assault, kidnapping, and unlawful use of mace.

Before trial on those charges, the state sought to admit evidence of defendant's history of committing violence against the victim. The state also sought to admit evidence of the resulting no-contact orders, defendant's violations of those orders, and the sanctions imposed for those violations. According to the state, the evidence was relevant to show that defendant had a motive to commit the crimes against the victim in this case, namely, revenge for her past reports to the police that resulted in periods of incarceration. The state also contended that the evidence of ongoing violence was relevant to prove that the victim did not consent to the sexual activity or the kidnapping.

The trial court admitted the evidence over defendant's objection. After a jury trial, defendant was convicted of all charges except the one for unlawful use of mace.

On appeal, defendant contends that the trial court erred in admitting the evidence of his prior violence against the victim. According to defendant, that evidence merely demonstrates his propensity to commit violent acts—a purpose that is prohibited under OEC 404(3). Defendant asserts

that, "[w]hen evidence of a defendant's motive is offered through evidence of prior bad acts under OEC 404(3), *State v. Johns*[, 301 Or 535, 725 P2d 312 (1986),] requires a trial court to apply five criteria in an assessment of relevance." Defendant contends that the prior bad acts evidence in this case fails the *Johns* test because his prior violence is "too dissimilar" from the charged conduct in this case. Because the evidence of the prior violence was "extensive and distracting," defendant argues, the court's error in admitting the evidence was not harmless.

The state does not dispute that the challenged evidence fails to satisfy the five-part *Johns* test. That is irrelevant, the state contends, because the evidence is not subject to that test. The *Johns* test, the state counters, applies only to evidence offered to prove a defendant's criminal *intent*. The evidence in this case, the state asserts, was offered to prove defendant's *motive*, which is different from the issue of intent and is a permissible purpose for admitting prior bad acts evidence under OEC 404(3). Further, the state notes, the evidence was offered to prove the victim's lack of consent to defendant's sexual conduct and the kidnapping, which is an element of those offenses. Accordingly, the state concludes, the evidence was offered for purposes other than to demonstrate defendant's criminal propensity, and the trial court's admission of the evidence was not erroneous.

We review a trial court's admission of evidence of a defendant's prior bad acts (also referred to as uncharged misconduct) for errors of law. *See State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). In general, OEC 404(3) prohibits the state from introducing such evidence to suggest that the defendant committed the offenses in the instant case due to a criminal propensity. Evidence of prior bad acts may be admitted, however, if it is introduced for a relevant noncharacter purpose:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.*"

OEC 404(3) (emphasis added). "[T]he essential inquiry under OEC 404(3) is not whether the [evidence] can be made to fit into one of the listed categories, but whether and how it is logically relevant to a noncharacter issue in the case." *State v. Johnson*, 340 Or 319, 338, 131 P3d 173, *cert den*, 549 US 1079 (2006). In making such an inquiry, a court applies a three-part test:

> "(1) The evidence must be independently relevant for a noncharacter purpose; (2) the proponent of the evidence must offer sufficient proof that the uncharged misconduct was committed and that [the] defendant committed it; and (3) the probative value of the uncharged misconduct must not be substantially outweighed by the dangers or considerations set forth in OEC 403."

*State v. Johnson*, 313 Or 189, 195, 832 P2d 443 (1992) (internal footnotes omitted). "[I]f uncharged misconduct evidence is *not* offered to prove intent or absence of mistake, the *Johns* analysis is inapplicable as a basis for determining the relevance of the evidence." *State v. Bracken*, 174 Or App 294, 300, 23 P3d 417, *rev den*, 333 Or 162 (2001) (emphasis added).

As an initial matter, we reject defendant's contention that the challenged evidence must meet the *Johns* test. As defendant acknowledges, the evidence of his prior bad acts was offered not to prove his criminal intent but to show that he had a motive—that is, that he had a reason to commit the crimes in this case. As we have previously noted, "*Johns*'s requirements do not apply to all 'non-propensity' bases for admissibility, including those specifically identified in OEC 404(3). * * * Rather, *Johns*, by its terms, controls only where 'prior bad acts' evidence is offered to prove intent [or absence of mistake]." *State v. Leach*, 169 Or App 530, 536, 9 P3d 755 (2000), *rev den*, 332 Or 632 (2001); *accord Bracken*, 174 Or App at 302 (motive evidence is not subject to the *Johns* test). Instead, to determine whether the challenged evidence in this case was properly admitted, we apply the three-part test described in *Johnson*, 313 Or at 195. We therefore turn to the application of that test.

■ The first part of the *Johnson* test requires that the evidence of a defendant's prior bad acts be independently relevant for a noncharacter purpose. *Id.* Evidence is relevant if

it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. Whether a defendant had a motive for committing a crime "is a relevant circumstantial fact, because it makes more probable the fact that [the] defendant committed the crime than if such a motive were not established." *State v. Hampton*, 317 Or 251, 258, 855 P2d 621 (1993).

■      In this case, the fact that defendant had been incarcerated twice on the basis of the victim's police reports gave him a reason to seek revenge and commit the offenses against her in this case. That motive made more probable that defendant committed the acts that the state was attempting to prove. Further, an element of the rape, sodomy, and kidnapping charges was the victim's lack of consent. Defendant's prior violence against her tended to make her testimony that she did not consent more probably true than it would have been without it. We therefore conclude that the challenged evidence in this case was relevant for noncharacter purposes.

The second part of the *Johnson* test is whether there was sufficient proof that defendant committed the prior bad acts. 313 Or at 195. In this case, defendant does not dispute that he committed the prior acts of violence against the victim.

The third part of the test is that the prejudicial effect of the challenged evidence did not substantially outweigh its probative value. *Id.* Again, in this case, defendant does not contest that the evidence at issue satisfies that part of the *Johnson* test.

We conclude that the prior bad acts evidence was admissible under OEC 404(3). Accordingly, the trial court did not err in admitting that evidence.

Affirmed.