Submitted October 29, 2020, reversed and remanded May 12, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN PHILLIPS,
aka Justin Michael Phillips,
*Defendant-Appellant.*

Tillamook County Circuit Court
17CR12173; A166928

489 P3d 1106

Defendant appeals from a judgment of conviction for six offenses involving the abuse of the complaining witness. In his first two assignments of error, defendant challenges the admission of prior incidents when he strangled the complainant, which the trial court admitted for the purposes of demonstrating defendant's motive and rebutting defendant's consent defense. Defendant also asserts that the trial court erred in admitting evidence from a pretext telephone call and text messages based on the hearsay exception in OEC 803(18a)(b). *Held*: The trial court erred in admitting evidence of those incidents for the purpose of motive but did not err in admitting them for the narrower, nonpropensity purpose of rebutting defendant's consent defense. The Court of Appeals did not reach the question whether the trial court abused its discretion in admitting the evidence for that narrower purpose under OEC 403. The complainant's statements in the pretext call and text messages were not admissible under OEC 803(18a)(b). Those errors are prejudicial and, accordingly, the court reversed and remanded defendant's convictions.

Reversed and remanded.

Mari Garric Trevino, Judge.

Kenneth A. Kreuscher filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeVORE, P. J.

Reversed and remanded.

**DeVORE, P. J.**

Defendant appeals from his judgment of conviction for one count each of first-degree rape, ORS 163.375, harassment, ORS 166.065(3), strangulation, ORS 163.187(4), and fourth-degree assault, ORS 163.160(2), and two counts of first-degree sodomy, ORS 163.405.[1] In his first two assignments of error, defendant challenges the trial court's admission of evidence of prior incidents when he strangled the complainant. The trial court admitted the evidence for two purposes under OEC 404(3) and rejected defendant's argument about unfair prejudice under OEC 403. We determine that the trial court erred in admitting evidence of those incidents for the purpose of motive, but that the trial court did not err in admitting them for the narrower, nonpropensity purpose of rebutting defendant's consent defense. We do not reach the question whether the trial court abused its discretion in admitting that evidence for a narrower purpose under OEC 403. In a *pro se* assignment of error, defendant asserts that the trial court erred in admitting evidence from a pretext telephone call and text messages based on an exception in OEC 803(18a)(b). We accept the state's concession of error on that point. We reject defendant's other assignments of error without discussion.[2] We determine that the two errors are prejudicial, and we reverse and remand.

"We evaluate the denial of a defendant's motion to exclude evidence of other acts in light of the record made before the trial court when it made its decision." *State v. Wright*, 283 Or App 160, 162, 387 P3d 405 (2016) (internal quotation marks and brackets omitted). The state's request to present evidence and defendant's objection took place during a pretrial hearing, so we focus on the evidence presented during that hearing. *See id.*

_____

[1] Although the statutes defining the offenses for which defendant was convicted have, in some instances, been amended after the alleged crimes, we refer to the current version of the statutes in this opinion because those amendments do not affect our analysis.

[2] In his sixth *pro se* assignment of error, defendant asserts that the trial court plainly erred when it instructed the jurors using a nonunanimous jury instruction. Because the record does not reveal whether the jury's guilty verdicts were unanimous, we conclude that it is not appropriate to consider defendant's unpreserved assignment of error for the reasons stated in *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020).

The charges in this case resulted from the rape, sodomy, strangulation, and assault of the complainant, K, in her home on October 25, 2016. Defendant and K had been in an "off and on" romantic relationship since about 2013 and had lived together at times in Portland. K and defendant had used drugs, including heroin, throughout their relationship.

In 2016, K moved from Portland to Tillamook County. Although defendant did not move with K, the two were still communicating. K's move was, in part, motivated by a desire to be closer to her son, who had been removed from her custody by Child Protective Services and placed with family in Tillamook. As a condition of the agency's reunification plan, K was prohibited from contact with defendant.

On October 25, 2016, K invited defendant to her home in Tillamook County to help him "detox" from heroin. She "felt like [she] wanted him there." That night, the two quarreled when K rebuffed defendant's requests for sexual activity. During the argument, defendant "jumped up out of [his] chair and * * * grabbed [K] by the neck," strangled her, took her pants off, raped her vaginally and anally, and then forced K to perform oral sex. Defendant remained for two more days at K's home while experiencing detox symptoms, then returned to Portland.

A few days later, K spoke to an advocate with the Women's Resource Center who encouraged K to report the rape and assault to police. She did, and, later, she made a recorded, pretext phone call to defendant. In that call, defendant made incriminating statements. He also made incriminating statements in several text messages to K.

K ended the relationship in 2017.[3]

Defendant was indicted by a grand jury on charges involving the incident in October 2016. Those charges were first-degree rape, two counts of first-degree sodomy,

_____

[3] In early 2017, defendant and K reconciled and resumed living together in Portland. In April 2017, domestic violence occurred again, in which K suffered broken ribs and a black eye. That domestic violence incident is not at issue on appeal.

first-degree burglary, harassment, strangulation, fourth-degree assault, stalking, and telephonic harassment. The stalking and telephonic harassment charges were dismissed before trial.

Prior to trial, the state filed a notice of intent to offer K's statements in the pretext phone call and in text messages with defendant pursuant to the hearsay exception contained in OEC 803(18a)(b).[4] The trial court ruled that it would admit the statements under that exception.

The state also filed a motion *in limine* requesting a hearing to determine the admissibility of evidence of defendant's prior uncharged acts that the state wished to introduce at trial. In part, the state sought to introduce evidence of two earlier incidents during which defendant had strangled K. In the first incident, in April 2015, defendant and K argued at home, when defendant "came at [K] and tried to strangle [her] by throwing [her] onto the bed." The police were called, charges were filed, and a restraining order was entered, but later the matter was dropped when defendant and K reconciled. In the second incident, in February 2016, the parties argued, and defendant strangled K, but charges were not filed. In the pretrial hearing, K did not describe the nature of the arguments that preceded those two incidents.

The state argued that the incidents in April 2015 and February 2016 were relevant for a number of noncharacter purposes. Among them, the state argued that the incidents showed that defendant's motive for the charged crimes was lingering hostility toward K.[5] In addition, or in

---

[4] Described in more detail below, OEC 803(18a)(b) provides a hearsay exception for the following categories of statements:

"A statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005, a statement made by a person concerning an act of abuse of an elderly person, *** or a statement made by a person concerning a violation of ORS 163.205 or 164.015 in which a person 65 years of age or older is the victim *** if the declarant either testifies at the proceeding and is subject to cross-examination, or is unavailable as a witness but was chronologically or mentally under 12 years of age when the statement was made or was 65 years of age or older when the statement was made."

[5] Perhaps relatedly, the state argued that the prior incidents helped to explain K's continuation of a relationship with defendant as a cycle of abuse, in which defendant sought to dominate. Although that argument may describe the general pattern of events, it does not appear to have been adopted by the trial court as a rationale for admission of evidence of the prior incidents.

the alternative, the state argued that the incidents would help rebut defendant's anticipated consent defense, in which he would contend that he engaged in "rough sex" to indulge in K's "rape fantasy."[6]

At the hearing, defendant argued that the strangulations in April 2015 and February 2016 were not relevant to show defendant's motive, because, although revenge might serve as motive, there was no evidence that revenge had motivated the charged rape. Defendant insisted that the state's motive argument depended upon propensity-based reasoning—that, because defendant had previously assaulted K, he had likely done so in the charged instance. Alternatively, defendant argued that, even if there were noncharacter-based theories of relevance, the other-acts evidence should be excluded as unduly prejudicial under OEC 403.

After the hearing, the trial court issued a letter opinion. The court determined that the prior incidents were relevant to show defendant's "hostile motive" and to show K's "lack of consent" so as to counter a likely rape-fantasy defense. Considering OEC 403, the trial court determined that the "only danger of unfair prejudice would be propensity," but that the danger of propensity-based reasoning was outweighed by the "highly probative" nature of the prior acts to the "issue of hostile motive and lack of consent."

The jury found defendant guilty of first-degree rape, two counts of first-degree sodomy, harassment, strangulation, and fourth-degree assault. The jury acquitted defendant of first-degree burglary.

On appeal, defendant renews his argument that the trial court erred in admitting evidence of the prior acts of strangulation because those acts were not relevant for a noncharacter purpose. The state renews its arguments that the prior acts were relevant to show defendant's motive of lingering hostility when raping and assaulting K and to show that K did not somehow consent to the charged acts. In his *pro se* brief, defendant adds that the trial court erred

---

[6] Defendant did not contradict the state's assertion that it was likely that he would raise K's consent as an issue.

in admitting K's hearsay statements made to defendant in the pretext call and text messages. The state concedes error regarding the hearsay statements but argues that the error is harmless. We focus on the other-acts issue, which necessitates retrial, and conclude by accepting the state's concession, to resolve an issue that could recur upon retrial.

We review a trial court's determination of whether other-acts evidence is relevant for a nonpropensity purpose under OEC 404(3) for errors of law. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017). Under OEC 403, we review for abuse of discretion a trial court's determination whether the danger of unfair prejudice substantially outweighs the probative value of the proffered evidence. *Id.*

In general, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OEC 401. All relevant evidence is admissible unless it is otherwise prohibited by law or another provision of the Oregon Evidence Code. OEC 402. Two potential limitations on admissibility are OEC 403 and OEC 404(3).

Appearing first, but often considered later, OEC 403 provides:

> "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

OEC 404(3), provides, in relevant part, that, "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith," but the rule allows the admission of other acts evidence for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or intent."

The proponent's theory of relevance under OEC 404(3) determines the admissibility of the other-acts evidence. *State v. Skillicorn*, 367 Or 464, 475, 479 P3d 254 (2021). When connecting other acts to the charged act, the

proponent must articulate the logical path that the proponent will ask the factfinder to follow. *Id*. at 483. That logical path cannot depend upon intermediate or ultimate inferences related to the defendant's character or whether defendant acted in accordance with a certain propensity. *Id*. at 482. A party cannot employ other-acts evidence, under any theory of OEC 404(3), to imply propensity. *Id*. at 483; *State v. Levasseur*, 309 Or App 745, 752-53, 483 P3d 1167 (2021).

When presented with other-acts evidence, the trial court must determine whether the evidence is truly relevant for a nonpropensity purpose under OEC 404(3). *Baughman*, 361 Or at 404. The proponent, here, the state, bears the burden to show that the evidence is relevant and that it is probative of something other than the defendant's predisposition to do wrong. *State v. Pratt*, 309 Or 205, 210, 785 P2d 350 (1990).

On appeal, we consider the state's theories of relevance on which the trial court admitted the evidence. *State v. Davis*, 290 Or App 244, 250, 414 P3d 887 (2018). In this case, two of the state's theories of relevance were accepted by the trial court.[7] The first was that evidence of the strangulations showed defendant's "hostile motive against the victim." The second was that the evidence could serve to rebut defendant's defense that the victim consented to rough sex as part of a "rape fantasy." For the reasons that follow, we agree with defendant that the state did not meet its burden with regard to motive in articulating a permissible, nonpropensity connection between the prior strangulation incidents and the charged rape and assault of K, but we agree with the state that the evidence was admissible for the limited purpose of rebutting defendant's consent defense.

The Oregon Supreme Court has defined motive as "a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act." *State v. Hampton*, 317 Or 251, 257 n 12, 855 P2d 621 (1993) (internal quotation marks omitted). In other

---

[7] The state repeats its argument that the prior events show a "cycle of violence" or defendant's desire for dominance, but the state's analytic path—if meant to avoid propensity reasoning—is less than clear, and that generalized rationale was not adopted by the trial court.

words, evidence is relevant to show a defendant's motive if the prior acts tend "to show *why* the defendant committed the charged crime." *Davis*, 290 Or App at 252 (emphasis in original).

To determine whether motive evidence is relevant, we look to whether the state has shown "'some substantial connecting link between the two acts.'" *State v. Wright*, 283 Or App at 171 (quoting *State v. Turnidge (S059155)*, 359 Or 364, 451, 374 P3d 853 (2016), *cert den*, 137 S Ct 665, 196 L Ed 2d 554 (2017) (internal quotation marks in *Turnidge* omitted)). Determining whether the inference is logical requires a detailed examination of the evidence in light of the circumstances of the crime. *Id.* If that examination only reveals a "mere possibility" that the same motive that caused an earlier crime or act also caused the charged crime, there is not a sufficient connecting link and the prior act is not relevant to show the defendant's motive. *Id.* at 174.

In some instances, to demonstrate a defendant's motive, a substantial connection between the prior acts and charged crime exists when the temporal proximity between the two suggests a continuing hostility. *State v. Hagner*, 284 Or App 711, 721-22, 395 P3d 58, *rev den*, 361 Or 800 (2017). We have previously held that a defendant's prior acts of angrily yelling at and physically assaulting the murder victim were relevant to show motive where both acts were committed within a week of the murder. *Id.* at 720-21. Where the prior acts were thus "connected temporally" with the charged crime, the jury could find that the defendant "had been motivated by the same animosity when he fired the fatal shot." *Id.* at 721-22.

There can also be a substantial connection between the prior act and charged crime where the defendant specifically references the prior act while committing the charged act. In *State v. Blanscet*, 230 Or App 363, 366, 215 P3d 924 (2009), the defendant had recently been released from prison for convictions of burglary, menacing, and interfering with a 9-1-1 call when the defendant returned to the same victim's home, pushed his way in, and assaulted her. *Id.* at 365-66. Throughout the charged assault, the defendant "repeatedly referred to the fact that [the victim] had

previously 'snitched' on him" as related to the prior acts. *Id*. at 366. Based on that set of facts, we determined that the fact that the defendant had been incarcerated twice on the basis of the victim's police reports did provide the defendant a motive to commit the charged crimes. *Id*. at 369.

In this case, in order that prior acts of strangulation could be relevant for the nonpropensity purpose of motive, those acts must have some tendency to show that defendant had a cause or reason to commit the charged rape and assault. On this record, we determine that they do not. Unlike in *Hagner* and *Blanscet*, the state has not demonstrated that defendant's prior assault of the same victim has any substantial logical link to the charged assault. The strangulations of K in April 2015 and February 2016 occurred about 19 months and 8 months, respectively, prior to the charged rape on October 25, 2016. There is no temporal proximity between the prior acts and charged crime like the close proximity of a week's time in *Hagner*. Unlike in *Blanscet*, defendant did not reference the earlier assaults during the conduct at issue. And here, the parallels between the charged acts and the prior acts are lacking. The charged violence grew out of an argument, which began with K's refusal to engage with defendant in sexual activity and culminated in sexual assaults. The nature of the arguments in April 2015 and February 2016 were not described, and they did not culminate in sexual assault. *See State v. Tena*, 362 Or 514, 524, 412 P3d 175 (2018) (rejecting other-acts evidence of domestic violence against prior partners separated in time and involving "other motives, such as disagreement about child-care issues, the victim's desire to work, and jealousy").

In sum, the state presented insufficient facts to carry its burden to show motive as a nonpropensity justification. The mere occurrence of prior violence did not show *why* defendant committed the charged acts—unless the factfinder infers a simple and obvious propensity toward violence. On this thin record and feeble justification, the evidence of the prior incidents was not admissible on a hostile motive rationale.

We reach a different conclusion as to the state's alternative rationale. Alternatively, the state argued that

the prior acts serve to rebut defendant's claim that K consented to rough sex. The state argues that evidence of the prior incidents tends to show that "it is unlikely that after defendant strangled and beat her again that [K] would willingly engage in sex of any kind, much less a 'rape fantasy.'" The trial court was persuaded, indicating that "[t]he fact that these prior acts occurred, involved the police, a restraining order and criminal charges is relevant to any defense that the charged actions were consensual."

On that, we agree with the state and the trial court. The factfinder does not need to engage in propensity-based reasoning to infer that defendant's prior violence toward K may tend to make less probable her consent to rough sex in a "rape fantasy." In considering that history, the factfinder is not drawing any conclusion about defendant's character and is only considering the potential that K, having twice been abused, might tend to avoid recurring harm, especially while inviting him into her home. A victim's past experience with a defendant can be relevant on the issue of consent. *See Blanscet*, 230 Or App at 369 (the defendant's prior violence against the victim tended to make more probably true her testimony that she did not consent to rape, sodomy, or kidnapping); *State v. Bartley*, 121 Or App 301, 306-07, 854 P2d 996, *rev den*, 318 Or 25 (1993) ("The evidence of the sexual relationship dating back to when the victim was only 11 or 12 years old helped explain to the jury why the victim might act the way she did and yet still not consent to sexual intercourse with [the defendant]."). For that reason, the evidence of the prior assaults, offered for that narrow purpose, is not inadmissible propensity evidence of defendant's character under OEC 404(3).

Because we have determined that evidence about the prior incidents is relevant, as nonpropensity evidence, for only one of two reasons urged by the state, we do not reach the question whether the trial court abused its discretion under OEC 403 when determining whether its probative value was substantially outweighed by the danger of prejudice. That consideration remains for the trial court on remand, in light of the narrower purpose of that evidence.

We are left with the question whether the trial court's error in admitting evidence of defendant's other acts, for one purpose but not another, was harmless. Evidentiary error is harmless if there is little likelihood that the error affected the verdict. *State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (relying on Article VII (Amended), of the Oregon Constitution).

Defendant argues that admitting evidence of the prior strangulations was harmful because the evidence was highly prejudicial, inflammatory, and as such created a risk that the jury would convict defendant because he had a propensity toward domestic abuse. The state counters that evidence of the strangulations was ultimately harmless given the strength of the other evidence of defendant's guilt.

The state's argument focuses on the wrong inquiry. Although there was certainly other incriminating evidence introduced at trial, including the pretext phone call and text messages between defendant and K, "when determining whether the erroneous admission of evidence was harmless, the question is not whether the state presented sufficient other evidence to support a conviction." *Skillicorn*, 367 Or at 494. "Instead, it is whether there is little likelihood that the error * * * affected the verdict." *Id.*

Although the jury could have considered the prior incidents on the issue of consent, it should not have considered that evidence on a theory of motive that carried an inference of propensity. In closing argument, the state recounted the evidence of the prior violence in April 2015 and February 2016, and the state argued that the prior incidents could be considered on the issues of intent, motive, and consent. Similarly, the trial court instructed the jury that they could consider the prior acts on those issues of motive or consent. The jury could have considered that evidence for the wrong purpose.

We cannot conclude that there is little likelihood that the error affected the verdict and that the admission of the evidence regarding the earlier violence was harmless. Those prior acts related to a central issue in the case—whether defendant strangled and otherwise assaulted K

without her consent in the charged instance. *See State v. Jones*, 285 Or App 680, 691, 398 P3d 376 (2017) (explaining that, "[i]f erroneously admitted evidence relates to a central issue in the case, it is more likely that the error substantially affected the verdict"). The prior acts were used in a way that encouraged the jury to employ impermissible character-based reasoning. *See Skillicorn*, 367 Or at 494-95 (explaining that propensity evidence carries the risk that the verdict will be based on unfair prejudice and that the jury will overestimate the probative value of the evidence). Because the evidence as used created a risk that the prior acts would influence the jury in considering the charges based on the events of October 25, 2016, we conclude that the admission of the evidence was harmful with regard to all of the counts on which defendant was convicted.

Finally, we address defendant's *pro se* assignment of error regarding hearsay, because the legal issue is likely to arise again on remand. *See State v. Savage*, 305 Or App 339, 341-42, 470 P3d 387 (2020) (explaining that, "[o]rdinarily, we will consider issues likely to arise on remand when the trial court *** has determined a question of law that will still be at issue after the case is remanded"). Defendant argues that the trial court erred when it initially admitted, under the hearsay exception contained in OEC 803(18a)(b), evidence of K's statements during the pretext phone call and text messages between defendant and K. The state concedes that the trial court erred when it determined that K's out-of-court statements related to defendant's abuse were admissible hearsay under OEC 803(18a)(b). We agree and accept the state's concession. In relevant part, OEC 803(18a)(b) allows for the admission of a

> "statement made by a person concerning an act of abuse as defined in ORS 107.705 or 419B.005, a statement made by a person concerning an act of abuse of an elderly person, as those terms are defined in ORS 124.050, or a statement made by a person concerning a violation of ORS 163.205 or 164.015 in which a person 65 years of age or older is the victim *** if the declarant *** testifies at the proceeding and is subject to cross-examination[.]"

However, OEC 803(18a)(d) clarifies that

"[t]his subsection applies to a child declarant, a declarant who is an elderly person as defined in ORS 124.050 or an adult declarant with a developmental disability."

Inasmuch as K is not a qualifying declarant as provided in OEC 803(18a)(d), the hearsay exception in OEC 803(18a)(b) does not apply.[8] For that reason, the trial court erred in ruling that the evidence at issue was admissible under that exception.

In sum, the prior acts evidence was potentially admissible but for a narrower purpose than that for which it was admitted; the ensuing question of admissibility of such evidence remains for the trial court's determination under OEC 403; and K's statements in the pretext call and text messages were not admissible under OEC 803(18a)(b).

Reversed and remanded.

---

[8] We do not consider whether the evidence at issue would be admissible under another hearsay exception on remand.