No. 238 March 19, 2025 127

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FELIX HERNANDEZ,
*Defendant-Appellant.*

Marion County Circuit Court
21CR44084; A179723

Erious C. Johnson, Jr., Judge.

Submitted April 29, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Rebecca M. Auten, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Pagán, Judge, and Mooney, Senior Judge.

MOONEY, S. J.

Affirmed.

**MOONEY, S. J.**

Defendant appeals a judgment of conviction, following a bench trial, for strangulation, ORS 163.187(4) (Counts 2 and 5), fourth-degree assault, ORS 163.160(2) (Counts 3 and 6), menacing, ORS 163.190 (Count 4), and second-degree assault, ORS 163.175 (Count 7). Each crime of conviction involved domestic violence against the victim, S.[1] Defendant raises several assignments of error. We begin with a brief recitation of the relevant facts. An exhaustive description of the assaults and other factual details would not benefit the bench, the bar, or the parties.

Defendant and S began an intimate relationship in 2012. They are the parents of A, born in 2014. Defendant has another child, L, from a different relationship, born in December 2018. S learned of L at some point after L was born. Defendant and S disagreed about whether and how L would be involved in their lives, and whether defendant and S would continue to reside together.

The charges in the indictment are based on three separate incidents. Counts 1 through 4 concern an incident that occurred in December 2019, when S told defendant that defendant could no longer live with her, and defendant became angry, assaulted S, and threatened to kill her. Count 5 is based on an incident that occurred in 2020 when defendant again assaulted S after they disagreed about whether defendant could bring L into the home while he cared for A. Counts 6 and 7 are based on a July 2021 incident when defendant again assaulted S and, among other things, repeatedly hit her head against the wall.

We turn now to those assignments of error that we reject with minimal discussion. First, the trial court did not err when it denied defendant's motion for judgment of acquittal (MJOA) on second-degree assault. There was sufficient evidence to support beyond a reasonable doubt that defendant used the wall as a "dangerous weapon" to injure S when he repeatedly hit S's head against the wall. *See State*

---

[1] ORS 132.586(2) provides that "[w]hen a crime involves domestic violence, the accusatory instrument may plead, and the prosecution may prove at trial, domestic violence as an element of the crime. When a crime is so pleaded, the words 'constituting domestic violence' may be added to the title of the crime."

*v. Glazier*, 253 Or App 109, 114, 288 P3d 1007 (2012), *rev den*, 353 Or 280 (2013) (holding that a hard wood floor was a dangerous weapon that was "readily capable of causing serious physical injury to the victim * * * where [the] defendant repeatedly struck her head against it"), and *State v. Reed*, 101 Or App 277, 279, 790 P2d 551, *rev den*, 310 Or 195 (1990) (holding that a sidewalk was a dangerous weapon where the defendant had repeatedly struck the victim's head against it). We reject defendant's "dangerous weapon" assignment without further discussion.

Next, we reject defendant's challenge to the trial court's denial of his motion to dismiss Counts 1 through 4. Defendant contends that there was an impermissible variance between the state's indictment and proof. He argues that the indictment alleged that the assault underlying Counts 1 through 4 occurred in 2019, but that the state's evidence demonstrated that it might have happened in December 2018. That "variance," according to defendant, deprived him of developing a statute of limitations defense. But there is no genuine dispute that the assault occurred in 2019. That is what the indictment charged, and the evidence produced at trial supports that. To the extent that defendant argues that the variance is about what triggered the assault—whether it was S first learning that L had been born or a later discussion about L with defendant—the indictment does not address that, and the reason for the assault is not a material element of the crimes charged in Counts 1 through 4. There is no variance between the indictment and proof. There is, therefore, no need to determine whether any variance was prejudicial. *See State v. Patton*, 259 Or App 80, 84-85, 312 P3d 581 (2013) (applying standard). We reject defendant's "variance" assignment without further discussion.

We turn now to defendant's first two assignments of error in which he challenges the granting, in part, of the state's motion to introduce evidence of defendant's prior bad acts under OEC 404(3) and 404(4). "We review a trial court's determination that other acts evidence is relevant and admissible under OEC 404(4) for legal error." *State v. Bonczkowski*, 337 Or App 701, 705, ___ P3d ___ (2025). We review whether "otherwise admissible evidence should

be excluded as unfairly prejudicial under OEC 403 \*\*\* for abuse of discretion." *Id.*

The trial court allowed evidence that "[m]ultiple times throughout their relationship the defendant threatened to kill [S] and \*\*\* threatened to put her in a ditch \*\*\*." It also allowed evidence of an uncharged incident that occurred in 2014 when S told defendant that she thought she was pregnant. Defendant responded by telling S that he was not sure he wanted a child, and she replied that it was not his choice. Defendant became angry at that point, and he assaulted S.

OEC 404(2) generally prohibits "[e]vidence of a person's character \*\*\* for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]" OEC 404(3) expressly prohibits other acts evidence when it is offered "to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(4), on the other hand, allows other acts evidence of criminal defendants—"if relevant" and not otherwise disallowed by certain rules of evidence, including OEC 403. The primary thrust of OEC 404(3) is to exclude other acts evidence, whereas OEC 404(4) includes such evidence. While OEC 404(4) and OEC 404(3) both apply to "evidence of other crimes, wrongs or acts," we apply OEC 404(4) rather than OEC 404(3) here because OEC 404(4) "applies to acts of a defendant offered in a criminal trial[.]" *State v. Davis*, 372 Or 618, 633, 553 P3d 1017 (2024).

"[T]o be admissible under OEC 404(4), evidence of other acts by the defendant must be relevant under OEC 401, and it must withstand OEC 403 balancing to determine whether its probative value is substantially outweighed by its prejudicial effect." *Id.* at 634-35. The first question, then, is whether the trial court was legally correct when it concluded that the other acts evidence it received was relevant.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more \*\*\* or less probable than it would be without the evidence." OEC 401. For the most part, uncharged acts that are not connected to the charged acts

are not relevant. *Davis*, 372 Or at 630. But "[i]n terms of evidentiary admissibility, [the relevance] standard represents a 'low bar,' *** meaning that evidence is relevant so long as it increases or decreases—even slightly—the probability that a fact will be consequential to the determination of an action." *Harper v. Washburn*, 308 Or App 244, 251, 479 P3d 1101 (2020). And while OEC 404(3) prohibits evidence of uncharged acts that gain minimal relevance because they are "indicative of a character trait *** (what is known as propensity)," *Davis*, 372 Or at 631, we apply OEC 404(4) rather than OEC 404(3) to the evidence of defendant's other acts in this criminal case. And OEC 404(4) allows such evidence so long as it is relevant and survives OEC 403 balancing.

The trial court did not err in determining that evidence of defendant's threats to S was relevant under OEC 401 "to why [S] did not report the alleged crimes sooner." The threats help to explain S's delay in reporting the charged assaults. *See, e.g.*, *State v. Panduro*, 224 Or App 180, 188-89, 197 P3d 1111 (2008) (the defendant's uncharged acts toward the sexual abuse victim were allowed to establish the victim's fear of the defendant and the reason for her delayed reporting).

We likewise conclude that the trial court did not err in determining that evidence of the 2014 assault was relevant under OEC 401 to "why defendant allegedly committed the charged crimes." The 2014 incident was probative of defendant's motive to commit the charged crimes. In discussing motive, the trial court found that the 2014 assault and the charged crimes were similarly precipitated by S challenging defendant's authority to make decisions concerning his children—his unborn child in the 2014 incident and A and L in the charged incidents. "[E]vidence of a defendant's past hostility toward the victim can be relevant to show that, when the charged act occurred, the defendant intentionally harmed the victim." *State v. Hagner*, 284 Or App 711, 720, 395 P3d 58, *rev den*, 361 Or 800 (2017). The record supports a determination that defendant's uncharged conduct in 2014 demonstrates the same hostile motive that was at work when he committed the charged acts—to exert

hierarchical control, as between defendant and S, over decisions concerning his children.

Unlike the facts in *State v. Morrow*, 299 Or App 31, 448 P3d 1176 (2019), this case involves direct evidence that defendant assaulted S in an effort to assert his authority over, and to control decisions about, his children. The 2014 incident reflected the same specific motive for violence against the same victim, S, as existed in the circumstances that led to the charged conduct. Despite the amount of time that had passed between the incidents, defendant's desire to exert and retain control over decision-making about his children supplies a logical and substantial connection "between the prior acts and the charged crime[s]." *Hagner*, 284 Or App at 720; *see also State v. Phillips*, 311 Or App 309, 317, 489 P3d 1106 (2021) (explaining the importance of a "substantial logical link" between the prior acts and charged crime when determining whether the prior acts could be relevant for the nonpropensity purpose of motive).

We conclude also that the trial court did not abuse its discretion in determining that, on balance, the probative value of defendant's threats and the 2014 incident were not substantially outweighed by the risk of unfair prejudice. It is important that neither the threats nor the 2014 incident depend upon propensity reasoning for their relevance. Because even though OEC 404(3) does not control "other acts of a defendant in a criminal trial, considering how the proffered evidence would have fared under that rule will have a significant effect on whether the trial court admits that evidence under the balancing required by OEC 403." *Davis*, 372 Or at 635 (internal quotation marks omitted).

First, as we explained, the threats were relevant to S's state of mind and why she delayed reporting the abuse. As such, the relevance of the threats does not depend on propensity reasoning. Concerning the 2014 incident, it bears noting that "motive" is one of the examples listed in OEC 404(3) of when uncharged conduct may be relevant for reasons having nothing to do with character or propensity. *See Davis*, 372 Or at 631 (explaining that "[r]elevance of an other act due to intent, motive, etc., is not an exception to OEC 404(3)'s prohibition on character evidence, it is an

example of reasoning that is not dependent on character"). The threats and the 2014 incident fall on the nonpropensity end of the relevance "spectrum" for other acts evidence—a spectrum that spans a range from those acts that are relevant for nonpropensity reasons to those acts that depend entirely on propensity reasoning for their relevance. Here, the threats and the 2014 incident are on the nonpropensity end of the spectrum where the evidence "generally will be admissible under OEC 403[.]" *Id.* at 635 (internal quotation marks omitted). The trial court considered the potential for unfair prejudice and, on balance, admitted the evidence of the threats and the 2014 incident. We cannot say, on this record, that the court abused its discretion in doing so. And even if the other acts evidence had been erroneously admitted in this bench trial, a conclusion we do not reach, we conclude that, given all the other evidence in the record, there is little likelihood that such an error would have affected the verdict. *See* Or Const, Art VII (Amended), § 3.

Affirmed.