618 July 25, 2024 No. 27

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

THOMAS ALAN DAVIS, JR.,
*Respondent on Review.*

(CC 131383CR) (CA A169891) (SC S069688)

On review from the Court of Appeals.*

Argued and submitted May 11, 2023.

Doug Petrina, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

David O. Ferry, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for respondent on review. Also on the briefs was Ernest G. Lannet, Chief Deputy Defender, Criminal Appellate Section.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih Justices, and Balmer, Senior Judge, Justice pro tempore.**

JAMES, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

Duncan, J., concurred and filed an opinion.

Garrett, J., concurred and filed an opinion, in which DeHoog, J., joined.

——————

* Appeal from Washington County Circuit Court, James Lee Fun, Jr., Judge. 319 Or App 737, 511 P3d 10 (2022).

** Bushong J., did not participate in the consideration or decision of this case. Baldwin, Senior Judge, Justice pro tempore, participated in oral argument, but did not participate in the consideration or decision of this case.

## JAMES, J.

In this case, we return again to the subject of "other acts" evidence, character, propensity, and OEC 403 balancing. The state prosecuted defendant for attacking a woman, a complete stranger, who was jogging by him on a sidewalk. Defendant tackled the victim from behind, knocking her out, and then dragged her into a secluded nearby ditch. The victim eventually fought off the attack, and defendant fled the scene. Defendant was charged with, among other things, attempted first-degree sexual abuse—a crime that requires a specific intent to sexually assault. However, in this case, the state faced a problem: There was no direct evidence that defendant intended to sexually assault the victim. Therefore, to prove that intent at trial, the state offered evidence of highly offensive, sexually explicit notes that defendant had previously written and delivered to two other women whom he did not know in the weeks preceding the attack on the victim. In those two notes, defendant expressed his desire to forcibly sexually assault the two women. The trial court admitted those notes, over defendant's objection, relying upon OEC 404(3), which provides that other acts evidence otherwise inadmissible under OEC 404(3) may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Once admitted, the state asked the jury to infer from those two notes that, when defendant physically attacked the victim in this case, he had the intent to ultimately sexually assault her. Defendant was convicted on all charges.

On defendant's first appeal, the Court of Appeals held that the notes were inadmissible character evidence under OEC 404(3), because the relevance of the notes to defendant's motive to commit a sexual assault depended on a character-based propensity inference. *State v. Davis*, 290 Or App 244, 248, 414 P3d 887 (2018) (*Davis I*). The Court of Appeals remanded the case to the trial court for a determination of whether the notes were nevertheless admissible under OEC 404(4). Admission under OEC 404(4) is limited by OEC 403, which provides that otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

On remand, the trial court ruled that the notes were admissible under OEC 404(4) and exercised its discretion to not exclude the evidence under OEC 403. On appeal from that ruling, the Court of Appeals, in a divided opinion, ruled that the trial court had abused its discretion in failing to exclude the evidence under OEC 403, because the danger of unfair prejudice resulting from the admission of the notes substantially outweighed the notes' probative value. *State v. Davis*, 319 Or App 737, 511 P3d 10 (2022) (*Davis II*).

We allowed the state's petition for review. Before this court, the state argues that the Court of Appeals erred in holding that the trial court abused its discretion under OEC 403 in admitting the evidence. Defendant argues that the Court of Appeals was correct, or, in the alternative, that if the trial court was within its discretion to admit the evidence under OEC 403, principles of due process prohibited the use evidence "offered only to prove propensity." For the reasons explained below, we conclude that the trial court's decision to not exclude the notes evidence under OEC 403 was within the permissible range of discretion. As we explain, we decline to address defendant's alternative argument under the Due Process Clause because that argument was not preserved before the trial court. Accordingly, we reverse the decision of the Court of Appeals and remand the case to that court for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

In 2012, the victim was jogging on a sidewalk near her home when defendant tackled her from behind, knocking her out temporarily. Defendant dragged the victim face down off the sidewalk and placed her in a secluded ditch nearby. The victim came to and began to fight back. Defendant stood over her and held one of her hands down. The victim was able to flip herself over, and, using her other hand, shoved two of her gloved fingers into defendant's mouth. Defendant then ran away. The victim suffered abrasions and an injury to her shoulder.

The victim could not identify her attacker but testing of her glove revealed defendant's DNA. Defendant was charged with first-degree kidnapping under ORS 163.235,

fourth-degree assault under ORS 163.160, and attempted first-degree sexual abuse under ORS 163.427. To prove attempted sexual abuse, the state was required to prove that defendant intended to forcibly subject the victim to sexual contact when he physically attacked her.[1]

Defendant did not say or do anything during the attack that amounted to direct evidence of a sexual motive. To prove defendant's sexual intent, therefore, the state offered evidence that, in the weeks preceding the attack, defendant had left handwritten notes on the cars of two female strangers at two different store parking lots. Both notes graphically expressed, in nearly identical terms, defendant's desire to engage in violent, painful anal sexual intercourse with the women.[2] Defendant left one of the notes approximately two months before the attack on the victim in this case, and he left the other note ten days before the attack. Defendant admitted authoring the notes, but claimed that they were not directed to strangers, but rather left for his girlfriend.

In opening statements to the jury, the prosecutor referenced the notes, stating:

> "[PROSECUTOR]:   * * *  What was his intent? What was his motive?
>
> "And the evidence that—part of the evidence of that point are some statements that [defendant] had been making in the weeks leading up to this particular attack.
>
> "He had been going—he'd been leaving these notes for women he had never met before, complete strangers to him."

---

[1]  *See* ORS 163.427(1)(a)(B) (defining first-degree sexual abuse as "subject[ing] another person to sexual contact" in circumstance where the victim "is subject to forcible compulsion by the actor"); ORS 163.305(5) (defining "sexual contact" as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party"); ORS 161.405(1) (defining attempt as "intentionally engag[ing] in conduct which constitutes a substantial step toward the commission of" a crime).

[2]  As described by the Court of Appeals,

> "[t]he two notes are very similar: Both are written in the second person (using the words 'you' and 'your'), both graphically describe the women's bodies, and both express, in nearly identical terms, a desire to engage in anal intercourse with the women in a way that would cause them pain."

*Davis I*, 290 Or App at 248.

This prompted an objection from defense counsel on OEC 404 grounds and discussions outside the presence of the jury. In response, the state argued that the notes were not "other acts" evidence at all, but rather, properly conceived of only as hearsay—statements of defendant that showed his thoughts, offered to prove sexual intent:

"[PROSECUTOR]:   So the—my intent all along was to offer these notes into evidence in this case, not to prove that [defendant] is the perpetrator that attacked [the victim]. That can be done through DNA and other purposes.

"* * * * *

"These notes would be offered solely to prove [defendant's] intent. Because frankly, [j]udge, identity is not my problem in this case, but intent is, and I'm being very candid here.

"* * * * *

"* * * [T]o me the notes are being offered as party opponent admissions, so they're statements of the defendant that I'm offering to prove that his intent was to have sexual contact with a woman, with a woman that he didn't know.

"* * * [T]he analogy is this is no different than the defendant sitting next to his buddy and saying, 'I'm going to go out, and, you know, and rape me a woman tonight,' or something like that. 'I'm going to go out there and—and take what I want from this—from this woman.'

"* * * * *

"* * * [T]he notes would be offered as a party opponent admission in—in no different way than if I called a friend of the defendant to the stand who would say, 'You know, the defendant told me these things.'

"I'm not offering them as a part of that act contrary to what my opponent has asserted a couple times today. The defendant is not accused of sexually assaulting anybody else, nor do I intend to suggest to the jury that he has.

"* * * * *

"* * * [T]hese are being offered not as prior bad acts under 404—

"* * * * *

"—but as relevant statements of the defendant [under OEC] 403. * * *

"* * * * *

"Even though the notes are in some ways almost shocking when you see the little illustration, the—the—the reason they're shocking is because they're so darn probative. They're so darn informational about the defendant's intent."

At a later hearing, the state reiterated its theory of relevance:

"[PROSECUTOR]:   * * * These are the defendant's own words. These—these—these are things that the defendant himself said.

"And he said it about strange women. He said it about violent sex. And he clearly expressed his intent to want to sexually assault a strange woman.

"If these notes said something like, you know, 'Heil Hitler, I am a Nazi,' or, you know, some other very, very inflammatory, but unrelated topic, which they don't, then there would be a good argument that, 'Hey, the [s]tate's just trying to paint my—a picture of my client as a bad guy.

"And—and that's not the case. * * *

"We are offering the notes to summarize as relevant evidence of the defendant's—a statement of the defendant relevant to his—his intent, his motive. And it is distinct from any evidence we might be offering as past conduct that he has engaged in with respect to any acts.

"Because—for those reasons we don't go through a[n] [OEC 404(3)] analysis, but we do go through a basic relevance test."

The trial court accepted defendant's arguments that the notes should be viewed as "other acts" evidence under OEC 404, but agreed with the state that they were admissible as evidence of intent. However, it redacted some of the more graphic and inflammatory statements from the notes, and it limited the state's presentation of the evidence to the fact that defendant had penned the notes and had left them, in public places, on the vehicles of two women whom he did not know.

On direct examination of the investigating officer, the state introduced the following testimony about circumstances surrounding the discovery of the notes:

"[PROSECUTOR]: Did you recently—by 'recently' I mean about a year and five months ago—become involved in an investigation regarding some notes that were being left on women's vehicles?

"[OFFICER]: Yes, sir.

"[PROSECUTOR]: All right. Were those notes being left in vehicles that were in public places, specifically in shopping centers?

"[OFFICER]: Yes, sir."

The state then introduced the redacted notes into evidence, and their contents were read to the jury. The officer also testified that defendant had admitted leaving the notes and that he did not know either of the women on whose cars he left the notes. At the conclusion of the trial, the court delivered a limiting jury instruction concerning the two notes, advising the jury that the notes "may only be considered for their value, if any, in determining the defendant's motive in committing the alleged crimes" and that they could be considered "only if the jury has first determined that defendant is, in fact, the person involved in the alleged crimes." The jury found defendant guilty on all charges.[3]

Defendant appealed his convictions to the Court of Appeals, assigning error to, among other things, the trial court's ruling admitting the two notes as evidence of defendant's motive or intent in attacking the victim.[4] The

_____

[3] The trial court imposed the presumptive sentence of life without the possibility of parole for the conviction for attempted first-degree sexual abuse, because defendant had two previous convictions and sentences for felony sex crimes: In 2000, defendant was convicted of sexual exploitation of a minor, and in 2009, he was convicted of attempted first-degree sexual abuse. *See* ORS 137.719(1) (establishing life without the possibility of parole as presumptive sentence for a sex crime where the defendant has been sentenced for felony sex crimes at least two times prior to the current sentence).

[4] Defendant also argued that the trial court erred in failing to grant his motion for judgment of acquittal on the attempted first-degree sexual abuse conviction and in imposing a sentence of life without the possibility of parole on that conviction. The Court of Appeals held that the trial court did not err in denying defendant's motion for judgment of acquittal, because there was sufficient evidence in the record for a rational juror to find beyond a reasonable doubt that

Court of Appeals reversed, holding that the notes were not admissible as noncharacter evidence of motive or intent under OEC 404(3), because "the logical relevance of the note depends on a character-based inference, *i.e.*, that defendant has a propensity to commit acts of sexual violence against female strangers." *Davis I*, 290 Or App at 246. The court further concluded that the error was not harmless. *Id*. at 257-58. The court declined to address the state's argument on appeal that, even if the notes did invoke a character-based propensity inference, they were admissible under OEC 404(4), because the state had not raised that issue below. *Id*. at 257. For that reason, it remanded the case to the trial court for a determination of the admissibility of the notes evidence under OEC 404(4).

On remand, the trial court determined that the notes were admissible under OEC 404(4). That rule provides that, "[i]n criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant, except as otherwise provided by" certain other evidentiary rules, including OEC 403, the Oregon Constitution, and the United States Constitution. OEC 404(4). The trial court found that the notes were relevant evidence that demonstrated defendant's interest in violent, nonconsensual sex with strangers and explained defendant's purpose in attacking the victim:

> "I do conclude that this evidence is an inference of behavioral disposition or propensity that relies upon a chain of inferences that employs the evidence—that is the notes—to establish that defendant is more inclined to act or think in a given way [than] is typical and is, therefore, more likely to have acted or thought that way on a particular occasion, which is exactly what the issue in this case was.
>
> "It is whether or not defendant acted or thought the way charged by the [s]tate on this particular occasion. That is the central issue. When viewed in that light, the evidence does explain that act.
>
> "* * * * *

defendant intended to subject the victim to sexual contact when he attacked her. *Davis I*, 290 Or App at 261-62. The court declined to address defendant's argument concerning sentencing, given its conclusion that the trial court erred in admitting the notes and that that error required remand. *Id*. at 262 n 6.

"And as I've said earlier, in the [c]ourt's opinion, on a character analysis, there is sufficient evidence, the evidence that [defendant] is more inclined to think or act in a given way than is typical and, therefore, more likely to have acted or thought that way on a particular occasion. There is a logical connection between other acts evidence and the charged offense."

The court also considered the notes evidence under OEC 403[5] and found that the probative value of the notes was not substantially outweighed by the danger of unfair prejudice. The court observed that the trial court, in the original trial, had redacted the notes to reduce their prejudicial effect and that it had given a special jury instruction to focus the jury's attention on the act at issue in the case and to restrict the use of the evidence.

The trial court then concluded,

"* * * [The notes are] admissible, in the [c]ourt's opinion, under OEC 404(4). [They are] admissible to explain the defendant's purpose [or] motive for attacking the victim; give[] rise to reasonable inference, which is a general interest in violent, nonconsensual sex with women he does not know; and relevant to explain purpose or motive for the attack.

"There is a general interest in nonconsensual sex with females that are strangers, which is probative of whether defendant intended to have sexual contact with the victim when he attacked her on this occasion. That inference of a peculiar sexual interest in nonconsensual sex with female strangers is probative of that general interest to prove he was acting in conformity with that interest when he attacked the victim in the incident case."

The trial court ruled that a new trial was unnecessary, and it reinstated the original judgment.

Defendant appealed that ruling to the Court of Appeals, arguing that the notes were not relevant to the issues in the case, and that, even if they were relevant, the

---

[5] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

notes should have been excluded under OEC 403, because the danger of unfair prejudice substantially outweighed any probative value of the evidence. The Court of Appeals agreed with defendant and reversed in a divided opinion. The court began by stating that it reviews a trial court's determination under OEC 403 for abuse of discretion. *Davis II*, 319 Or App at 746. The majority then went on to describe the notes as "uncharged evidence of sexual misconduct," which, in a prosecution for sex crimes, it stated, "presents a 'due-process-jeopardizing danger of unfair prejudice' and has an 'inflammatory nature'" and is therefore "particularly pernicious." *Id*. at 748-49 (quoting *State v. Terry*, 309 Or App 459, 465, 482 P3d 105 (2021)). For that reason, the majority concluded that, although the notes were relevant to a fact of consequence to the state's case and thus had probative value,[6] their probative value was substantially outweighed by the danger of unfair prejudice to defendant, because the extremely graphic nature of the notes "[gave] rise to the risk that the jury would convict defendant not because defendant engaged in the charged conduct but, instead, because the jury believed that defendant *serially* engaged in threatening conduct toward female strangers—something for which he is not on trial in this case." *Id*. at 752 (emphasis in original). The majority therefore determined that the trial court had abused its discretion in reaching a contrary result and declining to exclude the notes.

Judge Armstrong dissented. He opined that the notes' relevance did not depend on character reasoning, and that *Davis I* had erred in holding otherwise, reasoning:

> "A jury could infer defendant's intention to make the victim he dragged face down into the ditch scream from pain from anal sex not because of a 'persistent trait' they inferred from the notes but because *that's what the notes said he wanted to do to a stranger*."

---

[6] The court found that

"there is a relationship between the proffered evidence (describing a desire to engage in violent sexual acts with strangers) and the proposition sought to be proved (that if defendant was the person who engaged in violent conduct toward [the victim], he did so intending to subject [the victim] to sexual contact)."

*Davis II*, 319 Or App at 751.

*Id*. at 755 (Armstrong, S. J., dissenting) (emphasis in original).

## II.   ANALYSIS

We begin by explaining how the procedural history of this case circumscribes the evidentiary question on review. As noted earlier, the state did not seek review of *Davis I*, which held that the notes were inadmissible under OEC 404(3) because the state's theory of relevance depended, at least in part, on character-based reasoning. On remand, the trial court began from that premise but again admitted the evidence, this time under OEC 404(4) after conducting OEC 403 balancing. Thus, the ruling now on review is whether the trial court abused its discretion in (1) allowing the state to show that defendant had a sexual intent when he attacked the victim, by (2) admitting evidence—the notes and testimony about the notes—that, according to the Court of Appeals in *Davis I*, depended for its logical relevance, at least in part, on inferences about defendant's character.

In light of that history, the underlying premise of the trial court's ruling—that the relevance of the notes depended, at least in part, on character-based reasoning and could not be admitted under OEC 404(3)—is not squarely before this court and never has been. The parties have argued the case to us on the assumption that the holding in *Davis I* controls the analysis in this case, and that OEC 404(4) is the only possible vehicle for admission. That point bears emphasis, because our analysis that follows works with that premise—that part of the notes was, arguably, character evidence of a type that would be prohibited under OEC 404(3).

We also point out that OEC 404(3) precludes the admission of evidence that depends, for its relevance, on character-based reasoning, when present in any amount. Thus, once the Court of Appeals determined in *Davis I* that any degree of character-based reasoning was present, its analysis under OEC 404(3) was complete. That court was not called upon to further consider the degree of character-based reasoning that is present. As we will explain, however, that consideration is central to performing the OEC

403 balancing of evidence admitted under OEC 404(4). However, to properly analyze the probative value and prejudicial effect of the evidence in this case, we find it necessary to first discuss OEC 404(3) and OEC 404(4) in some detail.

A.  *OEC 404(1), (2), and (3)*

OEC 404 generally makes "character" evidence inadmissible to prove that a person acted in conformity with the person's character. The original version of the rule, enacted in 1981, contained only three subsections, consisting of what today is found in OEC 404(1), (2), and (3). Or Laws 1981, ch 892, § 24. Those three subsections have remained unchanged since their enactment. They provide only limited instances when evidence of character is admissible. First, OEC 404(1) provides that "[e]vidence of a person's character or trait of character is admissible when it is an essential element of a charge, claim or defense." Second, OEC 404(2) provides that "[e]vidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion," but it sets out four exceptions to that general bar:

"(a)  Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;

"(b)  Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor;

"(c)  Evidence of the character of a witness, as provided in ORS 40.345 to 40.355; or

"(d)  Evidence of the character of a party for violent behavior offered in a civil assault and battery case when self-defense is pleaded and there is evidence to support such defense."

OEC 404(3) speaks to evidence of other crimes, wrongs, or acts. Generally, in the context of a trial, which is focused on considering specific alleged actions, evidence of acts disconnected from the allegations at issue frequently has little, if any, relevance. However, one way an "other act" can be minimally relevant to satisfy OEC 401 is to show

that the act is indicative of a character trait, that the person is likely to have acted in conformity with that character trait during the events at issue at trial (what is known as propensity), and that therefore the otherwise irrelevant other act is relevant to determining if defendant committed the alleged act.

Using character in that way—to make otherwise irrelevant acts relevant in the trial—is prohibited by OEC 404(3):

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

OEC 404(3) expressly states that an "other act" may be admissible for certain purposes, but not to prove "character" "in order to show that the person acted in conformity therewith." That second sentence of OEC 404(3) does not make *some types* of character evidence admissible. Rather, that sentence explains the limits of the first sentence's reach. It expresses the notion that, at times, other acts evidence may be relevant without invoking a person's character at all. Relevance of an other act due to intent, motive, etc., is not an exception to OEC 403(3)'s prohibition on character evidence, it is an example of reasoning that is not dependent on character. *See, e.g.*, *State v. Johnson*, 340 Or 319, 338, 131 P3d 173 (2006) ("As a general proposition, evidence of a defendant's other crimes, wrongs or bad acts is not admissible in a criminal case to prove the defendant's antisocial or criminal propensities. *** However, such evidence may be admissible to prove *other* facts that are relevant in the case, as long as the chain of logical relevance connecting the evidence to the 'other' fact or facts does not ultimately rely on an inference relating to the defendant's character or propensities." (Emphasis in original.)).

Importantly, while OEC 404(3) appears on its face to regulate only the ultimate purpose for which evidence is offered, this court's case law makes clear that the prohibition on character evidence is more expansive than that. As we made clear in *State v. Jackson*, 368 Or 705, 717, 498 P3d

788 (2021), it is the responsibility of the proponent of other acts evidence to establish, under OEC 404(3), that character and propensity *reasoning* is not being used:

> "If the proponent's 'theory of relevance requires the fact-finder to employ propensity reasoning'—to rely on an inference about the defendant's bad character and resultant propensity to commit criminal acts—at any link in the chain of logical relevance, then the evidence is subject to the limits on character evidence in OEC 404(3)."

OEC 404(3) prohibits character and propensity reasoning entirely. If character and propensity reasoning is necessary, in any amount, to establish relevance and connect the other act to the issues at trial, OEC 404(3) requires its exclusion. *See, e.g.*, Julius Stone, *The Rule of Exclusion of Similar Fact Evidence: England*, 46 Harv L Rev 954, 975 (1933) (explaining that the other-acts-evidence rule was a "broad rule of admissibility where there is relevance, except where the only relevance is *via* disposition" to commit crimes (emphasis in original)).

B.  *OEC 404(4) and OEC 403*

In 1997, the legal landscape surrounding the admissibility of other acts evidence in criminal cases changed when the legislature amended OEC 404 to add subsection (4). Or Laws 1997, ch 313, § 29. Unlike the other three sections of OEC 404, OEC 404(4) does not mention the word "character." Rather, that rule provides that, in criminal cases, evidence of "other crimes, wrongs or acts" by the defendant generally is admissible if it is relevant.[7] In *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015), we held that "the legislature intended OEC 404(4) to supersede 404(3) in criminal cases, except, of course, as otherwise provided by the state or federal constitutions."

---

[7]  OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a) [certain other rules of evidence] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

Now, in criminal trials in Oregon, the applicable subsection of OEC 404 that applies to acts of a defendant offered in a criminal trial is OEC 404(4), not OEC 404(3).[8] OEC 404(4), unlike OEC 404(3), does not require the state to prove to the court that other acts evidence is offered for a purpose other than to prove character or that the relevance of that evidence does not rely on propensity reasoning. OEC 404(4) therefore, on its own, is not the barrier to admission that OEC 404(3) might have been.[9]

There are, however, constraints on the admissibility of other acts evidence under OEC 404(4). The rule provides that other acts evidence is admissible if it is "relevant" and, if so, only "except as provided by," among other things, OEC 403 "to the extent required by the United States Constitution or the Oregon Constitution," as well as other requirements imposed by the state and federal constitutions. OEC 404(4). In *Williams*, we held that, in using the word "relevant" in OEC 404(4), the legislature intended to incorporate the requirements of logical relevance found in OEC 401. 357 Or at 14. In addition, we held that "OEC 403 balancing" is required before other acts evidence can be admitted under OEC 404. *Id*. at 18-19.[10] However, we did not

---

[8] Although, as with all evidence, other rules may apply, such as OEC 401 and OEC 403 which apply to nearly all evidence.

[9] In *State v. Baughman*, 361 Or 386, 404, 393 P3d 1132 (2017), we said that OEC 404(4) supersedes the first sentence of OEC 404(3) but it "does not supersede the second sentence of ORC 404(3)[.]" As we have explained earlier, the second sentence of OEC 404(3) provides examples of ways that other acts may not rely on character. OEC 404(4) did not supersede that sentence, because that sentence is not itself a barrier to admissibility, it explains what is *not* captured by the first sentence of OEC 404(3).

[10] The court in *Williams* held that, in a prosecution for child sexual abuse,

"the historical record may not definitively establish that it is always improper to admit 'other acts' evidence to prove propensity, but it at least demonstrates a historical concern for the prejudice that such evidence poses and the importance that balancing plays in protecting against the harm that may result from its admission. In our view, the only way that a court can ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice' is to conduct OEC 403 balancing. We therefore hold that that balancing is required by the Due Process Clause. Even if due process does not categorically prohibit the admission of 'other acts' evidence to prove propensity in prosecutions for child sexual abuse, it at least requires that, on request, trial courts determine whether the probative value of the evidence is outweighed by the risk of unfair prejudice."

357 Or at 18-19.

explain in *Williams* precisely what was meant by the phrase "OEC 403 balancing."

Later, in *State v. Baughman*, 361 Or 386, 397, 393 P3d 1132 (2017), we explored whether the "OEC 403 balancing" required before evidence may be admitted under OEC 404(4) is "traditional" or "subconstitutional" balancing—*i.e.*, balancing the probative value against the prejudicial effect of the evidence—or, as the state had argued, due process balancing, which would preclude the admission of other acts evidence only if its admission would render the trial fundamentally unfair as a matter of law. Ultimately, we concluded that, when the legislature enacted OEC 404(4), it "intended trial courts to conduct the balancing required by OEC 403 according to its terms," by which the court meant that a trial court must exclude even relevant evidence under OEC 404(4) when, in the exercise of its discretion, it determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id*. at 402.

Under OEC 403, relevant evidence may be excluded if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice." "Probative value" is "essentially a measure of the persuasiveness that attaches to a piece of evidence." *State v. Lawson*, 352 Or 724, 757, 291 P3d 673 (2012). Evidence is unfairly prejudicial if it "improperly appeals to the preferences of the trier of fact for reasons that are unrelated to the power of the evidence to establish a material fact." *State v. Shaw*, 338 Or 586, 614, 113 P3d 898 (2005) (internal quotation marks omitted). In the context of OEC 403, "unfair prejudice" means "an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one." *State v. Naudain*, 368 Or 140, 156, 487 P3d 32 (2021) (internal citation omitted). Evidence is not unfairly prejudicial simply because it is harmful to the defense. *Id*.; *Shaw*, 338 Or at 614 (same); *State v. Lyons,* 324 Or 256, 280, 924 P2d 802 (1996) (same). The key question is not whether the evidence is prejudicial, but whether it is *unfairly* prejudicial. *State v. Moore*, 324 Or 396, 407-08, 927 P2d 1073 (1996).

Thus, to be admissible under OEC 404(4), evidence of other acts by the defendant must be relevant under OEC

401, and it must withstand OEC 403 balancing to determine whether its probative value is substantially outweighed by its prejudicial effect. In *Baughman*, we suggested to courts a methodological approach for how to undertake the OEC 403 balancing required of evidence admitted under OEC 404(4). There, we suggested that, even though OEC 404(3) no longer applied to other acts of a defendant offered in a criminal trial, it was conceptually helpful to first consider "whether the proffered evidence" would have been admissible for "one or more nonpropensity purposes" under the previously applicable OEC 404(3) scheme. *Baughman*, 361 Or at 404-05.

Even though OEC 404(3) is no longer technically controlling of other acts of a defendant in a criminal trial, considering how the proffered evidence would have fared under that rule "will have a significant effect on whether the trial court admits that evidence" under the balancing required by OEC 403. As we explained:

> "At one end of the spectrum, other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3) generally will be admissible under OEC 403 as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that substantially outweighs the probative value of the evidence. *Williams*, 357 Or at 19. At the other end of the spectrum, when evidence is relevant only to prove a defendant's character, more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence. *Id.* at 20."

*Baughman*, 361 Or at 405.

Accordingly, even though "character" is not mentioned in OEC 404(4) and, for that reason, the rule does not expressly prohibit evidence of a person's character (as does OEC 404(2)), or prohibit character and propensity reasoning to establish relevance, as does OEC 404(3), a court is still advised to determine whether other acts evidence that is being offered under OEC 404(4) is either explicitly, or by inference, evidence of character and whether propensity reasoning is at play. That is so, because evidence that goes to establish a person's character and that is offered solely to prove that a person acted in conformity with their character "generally will have little or

no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial." *Williams*, 357 Or at 20.

As discussed, under OEC 404(3), using character and propensity reasoning to establish relevance, in any amount, renders the other act inadmissible. OEC 404(4) removed that barrier for other acts of a defendant offered in a criminal trial, to some degree. In *Williams* and *Baughman* we described admissibility of evidence under OEC 404(4) as a spectrum depending on whether character reasoning is present and how it is used:

> "At one end of the spectrum, 'other acts' evidence that is offered for [noncharacter] purposes—*i.e.*, to prove motive, intent, identity, or lack of mistake or accident—generally will be admissible as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that outweighs the probative value of the evidence. *Shaw*, 338 Or at 614-15. At the other end of the spectrum, as the state recognizes, when 'other acts' evidence 'goes only to character and there are no permissible inferences the jury may draw from it,' it is more likely that the evidence will be excluded."

*Williams*, 357 Or at 19-20 (emphasis in original). *Williams* described the two ends of the spectrum but did not expressly discuss what types of evidence fall between those poles. Given how this court described the ends of the spectrum, however, it follows that the middle of that spectrum consists of evidence where character reasoning may be implicit *to some degree,* or where, despite a noncharacter purpose being offered by the proponent of the evidence, a jury or factfinder could perceive the evidence as relying on character and action in conformity with character as its source of relevance to the trial. This potential for admission, subject to OEC 403 balancing, of character and character-based propensity reasoning, *to some degree*, is the essence of the change wrought by OEC 404(4). *Williams* described as classically "impermissible" evidence that "goes only to character," where "there are *no* permissible inferences the jury may draw from it." *Id.* at 20 (emphasis in original). That exists at one end of the spectrum and, as *Williams* said, is likely to be excluded. Thus, evidence that supports other, permissible inferences

does not "go[] only to character" and may potentially be admissible, even though character reasoning may be present, in some degree.

## C.   *Evaluating the notes evidence under OEC 403.*

As explained earlier in this opinion, the posture of this case leads us to work within the holding by the Court of Appeals in *Davis I* that the relevance of the notes depends at least to some degree on character-based reasoning, although we offer no opinion on whether that was correct. However, even assuming that premise, to properly assess the probative value and prejudicial effect of the notes evidence, we are called upon to decide the relative value of that degree—that is, to what degree is character, or propensity reasoning, present here? Does the relevance of the notes evidence derive primarily or substantially from character, or does the relevance of the notes derive primarily or substantially from a noncharacter source? To tease out the relative degree to which character may be present, we find it useful to consider two aspects of the notes' evidentiary value.[11] First, we consider the notes' contents. Do the contents of the notes—defendant's statements—depend on character, or propensity, to be relevant in this context? Or rather, is their relevance due to reasoning that does not invoke character?

At oral argument in this case, defense counsel asserted that the content of the notes was evidence of the character of defendant: namely, that defendant possessed the "character of someone who would say such a thing." Under defendant's conceptualization of character, every act is an act of character—the character of a person who would engage in that act. That improperly injects character where it does not exist.

---

[11] For purposes of assessing the OEC 403 probative value and prejudicial effect of other acts evidence admitted under OEC 404(4), when the factfinder could perceive both character and propensity reasoning as well as another noncharacter-based line of reasoning, it can be analytically helpful to divide the evidence into conceptual parts, where possible. Just as hearsay within hearsay may require careful parsing of components of evidence, assessing other acts evidence may require parsing of the "act" into its constituent parts to assess which aspects go to establish character, as opposed to noncharacter. Not only does such division aid in analysis, it facilitates discussion amongst the court and the parties about potential redactions or limiting instructions to minimize problems associated with the proffered evidence.

Generally, when a person's statements of their desires or intentions are offered at trial, the relevance of that evidence is not because it establishes that declarant has a particular character. Rather, the relevance of such statements is that they are direct evidence of defendant's thoughts, desires, and intentions. Litigants cannot transform every other act into character evidence simply by saying that it shows that the defendant had the "character of someone who would perform the act." Here, the relevance of the content of the notes was not because defendant possessed the "character" of a person who would say that they desire to violently sexually assault a stranger; the contents were relevant because they were evidence that defendant had, in fact, expressed his desire to violently sexually assault a stranger. As Judge Armstrong noted in his dissent in *Davis II*, the contents of the notes were defendant's expressions of what *"he wanted to do to a stranger."* 319 Or App at 755 (Armstrong, S.J., dissenting) (emphasis in original).

If defendant had told the person next to him at a bar that he wanted to sexually assault a woman later that evening, those statements, if offered in a trial for sexual assault allegedly perpetrated later that night, would generally not be conceived of as other acts evidence of defendant's character, or reliant on character-based propensity reasoning. Character is not needed to establish the relevance of the other act. Instead, they would be direct evidence of what he wanted to do. And, if evidence of those expressions were offered at trial to prove defendant's mental state, it would be evaluated for relevance under OEC 401 and its probative value would be weighed against its prejudicial effect under OEC 403, but it would not be evaluated under OEC 404 as other acts evidence using character as a means to imbue the statement with relevance. *See, e.g.*, *State v. Turnidge (S059155)*, 359 Or 364, 446-54, 374 P3d 853 (2016) (evaluating the defendant's statements about his views about law enforcement and other related beliefs for relevance under OEC 401, and not as other acts evidence under OEC 404).

In characterizing the contents of the notes throughout the briefing in this case, the parties have used the term "propensity evidence" liberally, at times using the phrase

"propensity evidence offered to prove propensity." Such language may be distracting. In this case, the content of the notes was offered to show that when defendant assaulted the victim in this case he desired to sexually assault her, a stranger, because he had made admissions that he desired to sexually assault multiple strangers in the weeks preceding the attack. That is certainly evocative of *probabilistic* reasoning, but the wellspring of that reasoning is defendant's own admissions, not his character, and its disconnection from character means it is not *propensity* reasoning, as defendant argues.

In sum, in this trial for attempted sexual assault, where the central issue is whether that physical assault was intended to lead to a sexual assault, defendant's statements contained in the notes are relevant not because of character, but because they establish defendant's continuous intent repeatedly expressed close in time to the act. The primary inference created by the contents of the notes is the non-character-based inference that defendant—having repeatedly, and within a short period, intentionally and deliberately expressed, without ambiguity, his intent to violently sexually assault strangers—possessed the same continuous intent when he assaulted the victim in this case mere weeks later.

However, as we stated earlier, the Court of Appeals held in *Davis I* that some degree of relevance of the notes was dependent on character. Again, working with *Davis I*, we do not foreclose that a jury could also, and at the same time, see the notes as evidence of defendant's character, in addition to his intent. That possibility can be due to their contents, but also, in part, to evidence of the placement of the notes. Defendant admitted that he authored the notes, but denied they were left for strangers, claiming they were instead written to his girlfriend. The state needed to present evidence not just of the notes' contents, but their placement on the windshields of vehicles, parked in public places, belonging to women whom defendant did not know. Accordingly, in offering testimony about the placement, the state was implicitly asking a factfinder to infer that defendant had observed strange women, knew their vehicles, and

targeted them based on their appearance. Seen through that lens, we do not foreclose that the jury could perceive the notes as both relevant to defendant's intent, as well as indicative of his character and actions in conformity with character: that defendant stalked strangers in the past, has the character of a stalker of strangers, and now, in this case, acted in conformity with that character by stalking the victim here, who was a stranger to him.

As we have tried to illuminate, the relevance of the content of the notes, in this context, is derived primarily from their expressions of intent, and does not depend on character. However, the contents and placement of the notes, viewed *in toto*, could be seen as potentially invoking character as the link to establish relevance—that defendant was a stalker, and thus invite the factfinder to view the contents as indicative of character, in addition to intent. Therefore, the notes invoke multiple potential chains of reasoning. Accordingly, the notes were not, by definition, at the far end of the spectrum identified in *Williams*: other acts evidence that "goes *only* to character." 357 Or at 20 (emphasis added).

However, even working with the *Davis I* holding that some character inference is embedded in the logic that makes the notes relevant to show defendant's sexual intent, the relevance of the notes is not dependent, primarily or substantially, on character. The relevance of the notes primarily or substantially is derived from their contents, which derive their relevance from being expressions of continuous intent, not character. As direct expressions of defendant's intent, those statements are highly probative. They describe, in defendant's own words, his desire to engage in violent sexual acts with strangers and the proposition sought to be proved by the state was that defendant intended to subject the victim, a stranger, to sexual contact. We emphasize that what makes the statements here particularly probative is that the statements are repeated—not a single utterance. Further, that repetition occurred over a period of weeks, not months, or years. The statements were written, not overheard and therefore more easily misunderstood due to vocal tone, body language, etc. The statements were unambiguous. And the statements were very intentionally made, not

said in reaction to another statement, or in the dynamics of a larger conversation.[12]

The notes evidence was, without question, highly prejudicial. But it is often the case that evidence that is most probative is also the most prejudicial, and that does not render the prejudice unfair. Certainly, the prejudicial effect of character evidence is great, but as discussed, even if the notes are arguably reliant on some degree of character, that degree is marginal, and character is certainly not the primary or substantial source of their relevance. In addition, the trial court took numerous actions to mitigate any unfair prejudice, including redacting some of the most incendiary wording from the notes to limit their inflammatory effect, limiting the state's use of the notes evidence, and giving the jury a limiting instruction.

Under OEC 403, relevant evidence may be excluded only "if its probative value is substantially outweighed by the danger of unfair prejudice." The rule favors admissibility, but ultimately is discretionary. As we noted in *State v. Titus*,

> "[a] decision to exclude evidence under OEC 403 is reserved to the trial court's discretion. *** That is so because application of OEC 403 may allow for more than one legally correct outcome. *** For example, in some cases, the record may support either the admission or exclusion of otherwise admissible evidence under OEC 403, and neither result legally would be incorrect."

328 Or 475, 481, 982 P2d 1133 (1999).

The question before us is not whether the trial court was required to admit, or exclude, the notes evidence under OEC 403. Rather, the question is whether, on this record, admission of the evidence was one—among multiple—legally permissible outcomes. *See, e.g.*, *State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) ("'Discretion' refers to the authority of a trial court to choose among several legally correct

---

[12] Before us, the state additionally argues that the prosecution's need for the evidence is a factor for consideration when evaluating the probative value of the evidence. Here, because the reasons we articulate are sufficient to support our holding that the trial court was within its discretion to rule that the probative value of the notes was not substantially outweighed by the risk of unfair prejudice, we need not, and do not, determine to what extent, if any, a party's "need" for evidence is properly considered in evaluating probative value.

outcomes."). For the reasons just discussed, we hold that because the primary or substantial value of the notes was not derived from character, or character-based propensity reasoning, declining to exclude the evidence under OEC 403 was within the permissible range of the trial court's discretion.

Finally, we briefly address defendant's alternative argument that, if the trial court was within its discretion to admit the evidence under OEC 403, principles of due process prohibited the use evidence "offered only to prove propensity." Although defendant developed that argument before the Court of Appeals, and before this court, we do not read the trial court record as fairly presenting that constitutional argument to the trial court. Before the Court of Appeals defendant acknowledged his due process argument was unpreserved, stating, "Defendant acknowledges that, on remand, he did not place any specific emphasis on * * * a due process requirement of exclusion of propensity-only evidence * * *." As we see this record, the only passing reference to the trial court hinting at the constitutional argument now being made was that "the admission of the notes renders the trial fundamentally unfair because the notes so clearly become the focus of attention to the distraction of the factfinder from the elements of the charged offenses." As we recently noted, "In some cases, a 'short-hand reference' may be sufficient to preserve an issue, when 'such short-hand references [are] used in a way and context that the other parties and the court would understand from that single reference the essential contours of the full argument.'" *State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024) (quoting *State v. K. J. B.*, 362 Or 777, 790, 416 P3d 291 (2018) (brackets in *Skotland*)). Defendant's statements to the trial court here were insufficient, even as shorthand, to afford the trial court a "meaningful opportunity to engage an argument on its merits and avoid error at the outset." *Id*.

In light of the lack of preservation of defendant's constitutional argument, our decision here today is purely statutory—explaining how OEC 404(4) and OEC 404(3) operate, in conjunction, to authorize a permissible range of discretion to admit other acts evidence of a defendant, in a criminal trial, when character is present in some degree that

is less than the primary or substantial source of relevance. We save for another day whether any provision of the state or federal constitutions limits that statutory discretion.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

**DUNCAN, J.,** concurring.

I agree with the majority's conclusion that the trial court did not err in admitting evidence of the notes. I write separately because I believe that the majority's analysis is based on a false premise and, as a result, is unnecessarily complicated and could cause confusion. In this concurrence, I offer an alternative analysis with the hope that it will clarify the issues in this case, as well as in future cases.

The majority's false premise is that the evidence of the notes was inadmissible under OEC 404(3). The majority assumes that premise because of the particular history of this case. As the majority recounts, when this case was tried, the state offered the evidence on the theory that the notes supported an inference that defendant intended to sexually assault women that he did not know. The prosecutor argued that the notes were relevant to show what defendant had said about his own intent. Over defendant's objection, the trial court admitted the evidence based on that theory of relevance. Accordingly, the case was tried, and the jury was instructed, based on that theory.

On appeal, defendant argued that the trial court had erred because the evidence of the notes was inadmissible under OEC 404(3). That rule prohibits the admission of other-acts evidence "to prove the character of a person in order to show that the person acted in conformity therewith." But it does not prohibit the admission of other-acts evidence for other purposes, including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[1] As this court explained in *State v.*

---

[1] In full, OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

*Skillicorn*, 367 Or 464, 483, 479 P3d 254 (2021), when determining whether evidence is barred by OEC 404(3), parties and courts cannot simply look at whether the ultimate inference that the proponent wants the factfinder to draw from the evidence relates to one of those listed purposes. Instead, the proponent of the evidence must identify its theory of relevance and the parties must analyze the inferences that the factfinder would have to draw from the evidence to make the finding that the proponent wants it to make. *Id*.

To use a simple example, if the state wanted to use evidence of a defendant's prior theft to prove a charged theft, the state could not simply state that the prior thefts were relevant to show the defendant's intent or motive at the time of the charged theft. Instead, it would have to identify its theory of relevance. If that theory would require the factfinder to draw an inference about the defendant's character, then the evidence would be barred by OEC 404(3). For example, if the state's theory of relevance was "once a thief, always a thief," the evidence would be barred.[2]

---

of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[2] When referring to evidence that would be "barred" by OEC 404(3), I am referring to evidence described in the first sentence of that provision: evidence offered "to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3). But OEC 404(3)'s bar on the admission of such evidence has been superseded by OEC 404(4), which applies in criminal cases and allows for the admission of a defendant's other acts. *See State v. Zavala*, 361 Or 377, 381, 393 P3d 230 (2017) (explaining "that OEC 404(4) supersedes only the first sentence of OEC 404(3) and that a trial court may admit nonpropensity evidence under the second sentence of that rule"). Nevertheless, whether evidence would be barred by OEC 404(3) is relevant to whether the evidence is admissible under OEC 404(4). As we explained in *State v Baughman*, 361 Or 386, 403-04, 393 P3d 1132 (2017):

"In criminal cases, OEC 404(4) makes other acts evidence *admissible* to prove a defendant's character, subject to specified rules of evidence and the state and federal constitutions. Consequently, OEC 404(4) supersedes the first sentence of OEC 404(3), which provides that '[e]vidence of other crimes, wrongs or acts is *inadmissible* to prove the character of a person in order to show that the person acted in conformity therewith.' (Emphasis added.) However, OEC 404(4) does not supersede the second sentence of OEC 404(3), which provides that other acts evidence 'may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.' If other acts evidence is not proffered to prove a defendant's character, but instead is offered for a nonpropensity purpose, then analysis under OEC 404(4) is unnecessary; the evidence 'may be admissible' under the second sentence of OEC 404(3)."

In the first appeal in this case, the Court of Appeals held that the theory of relevance that the state explained to the trial court before the trial was barred by OEC 404(3) because it required the factfinder to make an inference about defendant's character. *State v. Davis*, 290 Or App 244, 246, 414 P3d 887 (2018) (*Davis I*). As I will explain, I disagree with that holding, and I believe that it has put this case on the wrong analytical path. It has caused the majority to ask whether the trial court erred by admitting "character evidence" and then answer that question by concluding that the evidence was not really "character evidence."

First, was the evidence of the notes "character evidence" or "propensity evidence"? By those terms, I mean evidence that would be barred by OEC 404(3) because it is other-acts evidence that is offered to prove a person's character in order to show that the person acted in conformity therewith. I do not think it was "character evidence" because I do not think that a factfinder would have to draw an inference about the defendant's character in order to find the fact that the state wanted it to find, which was that, at the time of the charged crime, defendant had the intent to sexually assault women that he did not know. As I understand it, the state wanted to use the notes to show that, in the weeks leading up to the charged crime, defendant had personally, intentionally, and clearly expressed in writing his intent to sexually assault two women he did not know. From those actions, the state wanted the factfinder to infer that (1) defendant's intent was not specific to those two women, who were complete strangers to him, but applied to other women, and (2) given the nature of that intent, as evidenced by its intensity, specificity, and duration, it likely persisted at the time of the charged crime. Thus, as I see it, the inferences that the state wanted the factfinder to draw related to the nature of defendant's expressed intent. I do not believe that the line of reasoning that the state wanted the factfinder to follow required the factfinder to make inferences about defendant's character.

To analogize, if, on January 1, a person told a friend that he wanted to rob Bank A and then, on January 2, the person told the friend that he wanted to rob Bank B, OEC

404(3) would not preclude the admission of those statements in a trial prosecuting the person for robbing Bank C on January 3, if the state's theory of relevance was that the defendant had expressed an intent to engage in specific conduct and it was likely that that intent persisted at the time of the charged crime. (Of course, as with all other-acts evidence, there would be a risk that the evidence could be used for another, impermissible purpose, for example, to show that the defendant was a bad or dangerous person. That risk does not mean that the evidence is barred by OEC 404(3), but it is something that a court must consider when assessing whether the evidence should be excluded under OEC 403 and whether limiting instructions should be given.)

I believe that, when determining whether other-acts evidence is admissible, it is important to determine whether the evidence was admitted under OEC 404(3) or whether it was admitted only under OEC 404(4). In *State v. Baughman*, 361 Or 386, 404-05, 393 P3d 1132 (2017), this court explained how those provisions relate to each other and prescribed a framework for analyzing the admissibility of other-acts evidence that takes both of those provisions into account. We stated:

> "When a party objects to the admission of other acts evidence, a trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403. However, if a trial court determines that proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403."

> "A trial court's decision, at step one, about whether other acts evidence is relevant for a nonpropensity purpose, will have a significant effect on whether the trial court

admits that evidence at step two. At one end of the spectrum, other acts evidence that is relevant for a nonpropensity purpose under OEC 404(3) generally will be admissible under OEC 403 as long as the particular facts of the case do not demonstrate a risk of unfair prejudice that substantially outweighs the probative value of the evidence. [*State v. Williams*, 357 Or 1, 19, 346 P3d 455 (2015)]. At the other end of the spectrum, when evidence is relevant only to prove a defendant's character, more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence. *Id*. at 20."

*Baughman*, 361 Or at 404-05 (footnote omitted); *see also State v. Sperou*, 365 Or 121, 142, 442 P3d 581 (2019) (stating that *Baughman* "clarified the methodology for ruling on 'other acts' evidence with respect to evidence that could be admissible under either OEC 404(3) or (4)"); *State v. Tena*, 362 Or 514, 520, 412 P3d 175 (2018) (under *Baughman*, "the admissibility of evidence of other acts is determined by means of a two-part test").

　　　　Thus, if evidence is admitted solely for a purpose that is permissible under OEC 404(3)—and, therefore is not character evidence—there is no need to analyze its admissibility under OEC 404(4), which was enacted to allow for the admission of evidence that was not already admissible under OEC 404(3).

　　　　Applying the analytical approach that this court prescribed in *Baughman*, I would hold that the state's theory of relevance, articulated before the evidence was admitted in trial, was a noncharacter theory of relevance and, therefore, the evidence of the notes was not barred by OEC 404(3). I would then review the trial court's discretionary decision not to exclude the evidence under OEC 403, which allows a court to exclude evidence if its probative value is substantially outweighed by the danger of unfair prejudice. On the "probative value" side of the balance, I would consider the trial court's assessment of how probative the evidence was of the fact that it was offered to prove: whether defendant had an intent to sexually assault the victim. On the "unfair prejudice" side of the balance, I would consider the trial court's assessment of the risks of admitting the evidence, including,

but not limited to, the possibility that the evidence might be misused as character evidence. And I would conclude that the trial court did not abuse its discretion in admitting the evidence of the notes, given the state's noncharacter theory, as well as the trial court's partial redaction of the notes and its limiting instructions.

The majority takes a different path. That is understandable given the history of this case. As mentioned, when this case was on appeal the first time, the Court of Appeals held that the evidence of the notes was barred by OEC 404(3) because it was character evidence. *Davis I*, 290 Or App at 246. The Court of Appeals remanded the case to the trial court to consider the state's argument, raised for the first time on appeal, that the evidence was admissible under OEC 404(4). *Id*. The state did not seek review of the Court of Appeals' decision.

On remand, there was not a new trial. Instead, the parties litigated the hypothetical question of whether the evidence could have been admitted as character evidence under OEC 404(4). The trial court held that it could have. Defendant appealed for the second time, and the Court of Appeals reversed. *State v. Davis*, 319 Or App 737, 739, 511 P3d 10 (2022) (*Davis II*).

So, now, on review, the majority treats the question as whether the trial court erred in concluding that the evidence was admissible under OEC 404(4). Before admitting evidence under OEC 404(4), a trial court must conduct OEC 403 balancing. That is, it must balance the probative value of the evidence against the danger of unfair prejudice. As an appellate court, we review that balancing.

The majority concludes that the trial court did not err in admitting the evidence of the notes because the trial court did not abuse its discretion in balancing the probative value of the evidence against the danger of unfair prejudice. In reviewing the trial court's balancing, the majority proceeds as if we must assume that the evidence was admitted under OEC 404(4) because of what occurred on remand. I do not think that we have to. If parties and a trial court agreed that a statement was hearsay but disagreed about whether

a hearsay exception applied, I do not think that we would have to proceed as if the statement was hearsay if it was not. We do not have an obligation to perpetuate a misunderstanding of the law. We would not want to issue an opinion holding that a statement was admissible under a hearsay exception because it was not actually hearsay.

But if we had to treat the evidence of the notes as character evidence, then I think we would have to analyze the trial court's balancing differently than the majority does. We would have to assess its probative value as character evidence, not as noncharacter evidence. Correspondingly, we would have to assess the danger of unfair prejudice that would result from using the evidence as character evidence. Character evidence has long been prohibited for good reasons. *See Skillicorn*, 367 Or at 477-81 (describing history of, and reasons for, the prohibition). We would have to assess whether, in light of the reasons underlying the centuries-old prohibition, the trial court abused its discretion in its OEC 403 balancing.[3]

As we said in *Baughman*, "when evidence is relevant only to prove a defendant's character, more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence." 361 Or at 405. In other words, evidence admitted "solely to prove a defendant's character" is generally not admissible under OEC 403. *Id.* at 407.

In *Baughman*, this court stated that there is a "spectrum" of other-acts evidence. *Id.* at 405. The majority reads the court's statement to mean that we should consider to what "degree" the relevance of evidence depends on

---

[3] In this case, the issue on review is whether the trial court erred in its OEC 403 balancing, a required component of the analysis that must be done to determine whether evidence is admissible under OEC 404(4). But, of course, that balancing is not the only component of the analysis. Under OEC 404(4), evidence of a defendant's other acts is admissible in a criminal case only if (1) it is relevant, (2) not barred under certain rules of evidence, (3) not barred by the state constitution, (4) not barred by the federal constitution, and (5) admissible under OEC 403. Thus, in a case where evidence is proffered under OEC 404(4), a trial court should determine whether, among other things, evidence is barred by the state or federal constitutions. If it is, it is not admissible under OEC 404(4). If it is not, then the trial court can proceed to determine whether the evidence should nevertheless be excluded based on OEC 403 balancing.

character reasoning. But, as I understand it, when assessing the admissibility of other-acts evidence, we need to focus on the proponent's theory of relevance and determine if the theory requires character reasoning. A proponent may have several theories of relevance, some of which may involve character reasoning and some of which may not. The type and number of theories of relevance can affect where evidence falls on the *Baughman* spectrum.

If a proponent has only one theory of relevance and it involves character reasoning, then the evidence is likely to be on the "inadmissible" end of the spectrum; it will likely have to be excluded under OEC 403 because of due process concerns. But, because the extent of due process protections can depend on "historical practice," *Williams*, 357 Or at 17, there may be some types of evidence that involve character reasoning that are not all the way at the "inadmissible" end of the spectrum because the exclusion of such evidence is not so deeply rooted as to be "fundamental" for due process purposes, as this court suggested in *Williams* regarding other-acts evidence in child sexual abuse cases, *id*. at 17-18.

If a proponent has multiple theories of relevance, some of which involve character reasoning and some of which do not, the evidence might fall between the ends of the spectrum. In such a situation, a trial court might bar the character-based theories but allow the noncharacter-based theories.

Continuing across the spectrum to the other end, if a proponent's theory or theories of relevance do not involve character-based reasoning, then the proponent's evidence is more likely to be admissible.

In my view, the theory of relevance that the state proffered in support of admission of the evidence of the notes when that issue was litigated before trial was a noncharacter theory, putting the evidence on the more-likely-to-be-admitted end of the spectrum. I agree with the trial court's ruling that the evidence was not barred by OEC 404(3) and could be admitted under OEC 403. I do not think that this court is required to proceed as if the evidence was barred by OEC 404(3), but if we were to bind ourselves to the trial

court's ruling on remand, then we would treat the theory of relevance as a character theory, and the evidence would be on the more-likely-to-be-excluded end of the spectrum.

Because I agree with the majority's conclusion that the evidence of the notes was admissible, but disagree with its analysis, I respectfully concur.

**GARRETT, J.,** concurring.

Although I agree with the majority's conclusion that the trial court acted permissibly in admitting the evidence that defendant left two notes on women's cars, I reach that conclusion for different reasons. In my view, the majority opinion unnecessarily complicates the issues, introducing new concepts that will be difficult to apply in future cases.

This case presented an important opportunity to address how courts should evaluate the admission of character evidence under OEC 404(4) and OEC 403, in light of the due process constraints that this court recognized in *State v. Williams*, 357 Or 1, 346 P3d 455 (2015). The Court of Appeals majority approached that question by relying on a nonexclusive set of factors set out by the Ninth Circuit in *United States v. LeMay*, 260 F3d 1018, 1027-28 (9th Cir 2001), *cert den*, 534 US 1166 (2002)—which this court cited with approval in *Williams*—for use in determining whether character evidence may be admitted to prove a defendant's sexual purpose in a criminal case. The panel majority held that, although the notes had probative value to show defendant's sexual purpose when he attacked the victim, that probative value was substantially outweighed by the risk that the factfinder would unfairly rely on the evidence to punish defendant for being a "serial" assaulter of women, a charge for which he was not on trial. *State v. Davis*, 319 Or App 737, 752, 511 P3d 10 (2022) (*Davis II*).

The panel majority reached that conclusion "particularly in view of [this court's] cautionary words in [*State v. Baughman*, 361 Or 386, 403 n 8, 393 P3d 1132 (2017)]—*viz.*, 'that the federal constitution may, as a matter of law, prohibit the admission of other acts evidence to prove propensity in a criminal case in which the defendant is charged with crimes other than child sexual abuse.'" *Davis II*, 319

Or App at 752. Thus, the panel majority's review of the trial court's OEC 403 balancing was intertwined with due process considerations, and plainly was driven by this court's anticipatory statements in *Williams* and *Baughman* about how the Due Process Clause might apply outside the child sexual abuse context.

Applying the same case law and principles, the dissenting judge concluded that the trial court had acted "well within" the permissible range of OEC 403 discretion in admitting the evidence of the notes. *Id.* at 758 (Armstrong, S. J., dissenting). In the dissent's view, the "sexual-purpose theory in this case is not meaningfully distinguishable from the one that *Williams* recognized as having probative value." *Id.* The dissent concluded that the *Williams* analysis was applicable outside the narrow context of child sexual abuse, reasoning that, to the extent that *Williams* had suggested otherwise, that suggestion was not controlling and was analytically dubious. *Id.* at 760 & n 2.

In short, the divided opinions in the Court of Appeals squarely present the issue left open in *Williams* (and flagged again in *Baughman*), which is how OEC 404(4), OEC 403, and due process principles apply to the admission of character evidence in criminal cases other than child sexual abuse prosecutions. That, I thought, is why this court allowed review.[1]

I would reverse for the reasons discussed by Judge Armstrong in his dissenting opinion below. To paraphrase those reasons, the trial court did not abuse its OEC 403 discretion because, although the evidence of the notes does present some risk of unfair prejudice, that risk does not "substantially outweigh" the notes' probative value. That

---

[1] The state's petition for review presented two questions:

(1) "When the state offers evidence under OEC 404(4) that the defendant previously engaged in uncharged sexual misconduct to prove that the defendant intended to commit the charged sex crime, how should the trial court conduct its OEC 403 balancing to decide whether to admit the evidence?"

(2) "Does the Due Process Clause prohibit the admission of other-acts evidence to prove the defendant's propensity in a criminal case where the defendant is charged with crimes other than child sexual abuse?"

probative value is high because it is the only available evidence tending to show that defendant had a sexual purpose when he attacked the victim. And the use of that evidence to show that defendant had a sexual purpose on a particular occasion is permissible because it is distinct from using it only to show a likelihood that defendant acted in conformity with his bad character. *See Williams*, 357 Or at 23 (recognizing "a slim but distinct difference" between those theories of relevance).

In reaching the contrary conclusion, the Court of Appeals majority obviously was influenced by this court's statement in *Baughman* (repeating a statement in *Williams*) that, in any criminal case other than a child sexual abuse prosecution, this court *might* conclude that the Due Process Clause completely prohibits the admission of character evidence. That comment in *Williams*, however, was *dictum*, offered without supporting authority. And, as the Court of Appeals dissent correctly observed, the authorities that *Williams* did cite do *not* differentiate between child sexual abuse and other sex offenses.[2] No principled reason has been offered for why the approach this court took in *Williams* should not apply equally here.

Today, rather than answer the question on which the Court of Appeals panel split—whether the notes were admissible *as character evidence* to establish defendant's sexual purpose—the majority changes the premise, minimizing the "degree" to which the evidence depends on character reasoning. The majority goes about that by dividing the notes into two component parts: (1) their contents and (2) the fact of their placement on women's cars. __ Or at __ (slip op at 24:20-26:9). The majority then concludes that the notes' relevance comes "primarily" from their contents, and the contents of the notes do not depend on character reasoning because they simply reflect defendant's "continuous intent." *Id.*

---

[2] *See LeMay*, 260 F3d at 1025 (explaining that "courts have routinely allowed propensity evidence in *sex-offense* cases," including "prosecutions for offenses such as rape, incest, adultery, and child molestation" (emphasis added)); *United States v. Castillo*, 140 F3d 874, 881 (10th Cir 1998) (broadly considering "the historical record regarding evidence of one's sexual character" in "cases involving sex offenses").

I have difficulty following what the majority means in its assessment of the "degree" of character reasoning that is present. A character inference either is logically necessary to the chain of reasoning that makes the evidence relevant, or it is not. If a character inference is part of the logical chain, then our analysis under OEC 404(4) and OEC 403 should shift, as explained in *Williams*, to evaluate (1) whether the evidence is relevant for a legitimate purpose (*i.e.*, other than to show defendant's bad character), and (2) the risk that the jury will nonetheless misuse the evidence to decide guilt based on its assessment of defendant's character. *See* 357 Or at 19-20 (explaining that, when "other acts" evidence is offered under OEC 404(4), a trial court must engage in OEC 403 balancing, which involves evaluating other "nonpropensity purposes" for the evidence as well as the risk of juror misuse). The majority's approach adds an intervening, apparently quantitative assessment of the "degree" of character reasoning. If, by that, the majority means to ask to what *extent* the logical chain depends on a character inference, I am not sure that question makes any more sense than asking how much a physical chain depends on a single link.

The majority's answer to the question is, like the question itself, problematic. To weigh how much character reasoning is present, the majority disaggregates the evidence of the notes into (1) the fact of what defendant wrote and (2) the fact that the notes were placed on women's cars. 372 Or at 638-40. But no one, throughout this case, has ever suggested that those are *distinct* threads of relevance, and for good reason. The fact that notes were placed on women's cars would have virtually no significance if not for *what the notes said*. And the "intent" that the majority infers from the notes—an intent to commit sexual violence against "female strangers"—is inferable only because the notes *were left for female strangers*. The contents and placement are of a piece.[3] If the majority's analysis of the "degree" of

---

[3] The majority's conclusion that the "contents" are relevant for reasons having nothing to do with character, 372 Or at 638-39, is also inconsistent with the conclusion reached in the first appeal, *State v. Davis*, 290 Or App 244, 414 P3d 887 (2018) (*Davis I*). The majority is not bound by that decision, of course, but it purports to accept *Davis I* as "circumscribing" the issues on review. However, in stating that the notes are direct, noncharacter evidence of defendant's "continuous

character reasoning requires parsing the evidence in such a counter-intuitive fashion, litigants and courts will struggle to follow this approach. What if the evidence cannot be broken out into (supposedly) distinct threads of relevance? How does a court measure the "degree" of character-based reasoning in such a case?

When character evidence is offered under OEC 404(4), some "weighing" must occur, of course, but it is the weighing required by OEC 403: the probative value of the evidence against the risk of unfair prejudice. The other-acts evidence must be probative, as *Williams* explained, of something other than defendant's character, such as intent, motive, or identity; if it is probative only of bad character, then "no permissible inference" may be drawn from it, and it will fail OEC 403 balancing. 357 Or at 19-20. And character also must be considered on the other side of the scale: The risk of unfair prejudice, in this context, is the risk that the evidence, though relevant for a noncharacter purpose (such as intent), will be misused to decide guilt based on a character judgment. *See id.* at 18 (citing risk of factfinder "'generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged'" (quoting *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997))).

In short, when a character inference is present somewhere in the logical theory of relevance, the due process danger also is present: that the jury may render a verdict based on the defendant's character and not the evidence. That danger is addressed through OEC 403 balancing. I am not convinced that trying to ascertain the "degree" of character reasoning in the logical theory of relevance is a coherent step in the analysis.

Finally, having concluded that the trial court's weighing of the evidence passes muster under OEC 403, the

---

intent," 372 Or at 638-39, the majority departs altogether from *Davis I*, which held that any inference about defendant's intent toward *the victim*, derived from notes written several weeks earlier to *other women*, requires an intermediate inference about defendant's more general inclination to commit violence—*i.e.*, his character. *Davis I*, 290 Or App at 254-55. It is unclear what purpose is served by claiming to work within the holding of *Davis I* while rejecting the reasoning underlying that holding.

majority declines to address defendant's argument that the Due Process Clause of the federal constitution nevertheless bars admission of the evidence. 372 Or at 641-43. The majority rejects that argument as unpreserved. *Id.* I disagree.

This court's recent cases have made it clear that the question whether character evidence may be admitted under OEC 404(4) and OEC 403 is not truly severable from due process concerns. *See, e.g.*, *Baughman*, 361 Or at 402 (noting that the OEC 403 balancing of character evidence is not "devoid of due process considerations" and that "[a]s this court explained in *Williams*, it is the Due Process Clause that requires the application of OEC 403"); *Williams*, 357 Or at 18-19 (holding that, for admission of character evidence under OEC 404(4), OEC 403 balancing is required by the Due Process Clause to "ensure that the admission of 'other acts' evidence is not unfairly prejudicial and a violation of 'fundamental concepts of justice'"). The Court of Appeals majority and dissent both understood that. It is true that defendant did not use the words "due process" at the trial court, but I am not sure that he needed to under our case law; notably, the state not only declined to raise a preservation objection to defendant's due process argument but expressly asked this court to review that issue. Whether the Due Process Clause prohibits the admission of character evidence that would otherwise survive OEC 403 balancing is a pure legal question with which the parties have engaged and that the record in this case allows us to answer.

On the merits, I would conclude that the trial court's admission of the notes did not violate the Due Process Clause. As this court recognized in *Williams*, the United States Supreme Court has held that the due process concerns raised by the admission of character evidence are "obviated by the application of a rule of evidence that permits a court to consider the risk of prejudice and exclude the evidence when appropriate." 357 Or at 18 (citing *Dowling v. United States*, 493 US 342, 352-53, 110 S Ct 668, 107 L Ed 2d 708 (1990)). With that in mind, we concluded in *Williams* that "subjecting proffered 'other acts' evidence to OEC 403 balancing is a due process requirement." *Id.* The trial court here fulfilled that requirement. For the reasons stated in

Judge Armstrong's dissent, the trial court's OEC 403 balancing was not an abuse of discretion; moreover, as noted above, no reason has been given to conclude that the Due Process Clause requires a different result than in *Williams* simply because this case involves an adult victim.

Because I join in the majority's disposition but not in its reasoning, I respectfully concur.

DeHoog, J., joins in this concurring opinion.